HARRY MILLER *v.* LUTHER G. BINGHAM, ZENAS SKINNER, LESTER HALL, ALONZO L. BINGHAM *and* MERRILL BINGHAM.

[IN CHANCERY.]

*Assignment of overdue note. Evidence. Payment. Estoppel.*

A person taking an assignment of an overdue note and of the mortgage by which its payment was originally secured, takes them subject to all the defenses, legal or equitable, to which they were subject when in the hands of the assignor.

The declarations and admissions of the former owner of a mortgage note that it was paid, which were made after he had assigned it to a third person as collateral security for having signed a note with and as surety for him, and while it was so held by such third person; *held* admissable, and that they were to be regarded as original testimony to prove the fact of such payment against one to whom such former owner subsequently assigned it, after he had obtained it from the first assignee by the payment of the note upon which such assignee was surety.

The mortgage notes in this case held to have been paid when in the hands and under the control of an owner of them through whom the complainant derived his title.

Effect of a person who has a mortgage upon a piece of land witnessing a subsequent conveyance of it to a person who understands that the mortgage has been paid, with knowledge that he so understands it.

Miller *v.* Bingham et als.

APPEAL FROM THE COURT OF CHANCERY.  The bill stated that the defendant, Luther G. Bingham, on the 25th of November, 1845, being justly indebted to the orator in the sum of one thousand four hundred and seventeen dollars and fifty cents, specified in three promissory notes bearing date October 1st, 1845, two of said notes for four hundred and seventy-two dollars each, the other for four hundred and seventy-three dollars and fifty cents, payable, the first, on or before October 1st, 1849, the second on or before October 1st, 1850, the third on or before October 1st, 1851, in order to secure the payment of said notes, conveyed to the orator certain land in Williston ; that afterwards, on the 8th of May, 1851, the orator in consideration of one thousand four hundred and seventeen dollars and fifty cents received in full of James W. Hurlbut, assigned to him all the orator's interest in said mortgage together with said notes ; that afterwards on the 22d of December, 1851, the said Hurlbut in consideration of one thousand four hundred and seventeen dollars and fifty cents received of Jesse Thompson, transferred and assigned to said Thompson all his (Hurlbut's) interest in said mortgage deed, and the notes described therein ; that afterwards, on the 5th of November, 1852, the said Thompson, in consideration of one thousand four hundred and seventeen dollars and fifty cents received of the orator, transferred and assigned to the orator all his (Thompson's) interest in said mortgage, together with the notes described therein ; that after the execution of said mortgage deed on the 21st of July, 1852, the said Luther G. Bingham, by his certain other deed of bargain and sale of said last mentioned date, conveyed to the defendants Hall and Skinner the same land and premises ; and that afterwards, on the same day, the said Luther G. Bingham also conveyed the same premises to the defendants Merrill Bingham and Alonzo L. Bingham ; that the sums of money specified in the aforesaid notes were wholly unpaid, &c. The bill prayed for a foreclosure in the ordinary form.

The defendant Skinner in his answer set forth that while Hurlbut held said notes and mortgage, to wit, on the 20th of December, 1851, he borrowed a large sum of money of one Goerge W. Chittenden and gave his note therefor ; and for the purpose of further securing said Chittenden, he put said mortgage notes into the hands of said Chittenden, and authorized him to receive payment

upon them; and that while Chittenden held said notes and mort-
gage as security, to wit, on the 20th of December, 1851, the said
Luther G. Bingam paid said notes in full to said Chittenden, but
neglected to take them up or have them cancelled, although they
were then in the hands of said Chittenden; that he (the said Skin-
ner) was by said Bingham informed that said notes were paid, and
that the defendant Hall also informed him (the said Skinner) that
Hurlbut admitted to him that said notes were paid, and that he
believed the same to be true; and that, relying upon such informa-
tion, and believing that said mortgage was satisfied and was no
longer an incumbrance upon the premises in question, said defen-
dants Skinner and Hall purchased said premises of said Bingham
and fully paid him for the same, and that the said Bingham was now
wholly insolvent, and resided out of the state; the said Bingham by
his deed to said defendants Skinner and Hall, covenanted that said
premises were free and clear of all incumbrances; and that they
paid all that said premises were worth free of all incumbrance;
that if the said mortgage notes had not been fully paid prior to
the execution and delivery to the said defendants Skinner and Hall
of the said Luther G. Bingham's deed to them, that said Hurlbut
was at that time the owner of said notes and mortgage, and was
present at the execution and delivery by the said Luther G. Bing-
ham to the defendants Skinner and Hall, of his said deed to them,
and subscribed said deed as an attesting witness of its execution
and delivery, well knowing at the time the whole contents of said
deed, and that said defendants Skinner and Hall accepted the same
believing that said mortgage debt mentioned and set forth in the
orator's bill had been fully paid, and constituted no lien or incum-
brance whatever upon the mortgaged premises; and that the said
Hurlbut did not at any time before the execution and delivery of
said deed inform said defendant or said Hall, or in any manner
mention in their hearing or presence, that the said mortgage debt
or any part of it was unpaid, or that the said mortgage was in
force; and that he therefore insisted that the orator and Hurlbut,
and each of them, were in law and equity forever barred and
estopped from setting up the said mortgage against the title of the
said Skinner and Hall to the said mortgaged premises, &c.

The answer of the defendant Hall set forth the same facts stated

in the answer of Skinner and in addition thereto, that he was informed by Bingham, Hurlbut and Chittenden of the fact that said mortgage notes were paid, before he took the deed from said Bingham to himself and said Skinner, and that he and said Skinner took said deed relying upon the statements of said Hurlbut, Bingham and Chittenden that said notes described in the orator's bill had been fully paid.

These answers were traversed and a large amount of testimony was taken, the conclusions deducible from which being sufficiently stated in the opinion of the court.

The court of chancery, October 16th, 1855,—PECK, chancellor,— decreed that as to the defendants, Skinner and Hall, the bill be dismissed with costs, and as to the other defendants, without costs, they not having appeared or answered; but that as to the defendants, other than Skinner and Hall, the orator might have a decree if he so elected.

From this order the orator appealed.

*W. W. Peck, E. Harvey and L. B. Peck,* for the orator.

*E. R. Hard and L. Underwood,* for the defendants Skinner and Hall.

The opinion of the court was delivered by

ISHAM, J.   The orator's title to the mortgage and notes on which this bill of foreclosure is brought, does not rest on the fact that they were originally executed and made payable to him; but is derived from an assignment to him by Jesse Thompson on the 5th of November, 1852.   The mortgage deed and notes were executed by Luther G. Bingham to the orator on the 25th of November, 1845, and were transferred to Hurlbut May 8th, 1851. On the 22d of December 1851, the mortgage and notes were assigned by Hurlbut to Jesse Thompson, and by Jesse Thompson, on the day above stated, to the orator.   The notes were overdue at the time of the assignment from Hurlbut to Thompson.   The orator, therefore, took the notes subject to all the defenses legal or equitable which could have been made to them when they were in the hands of Hurlbut.   If Hurlbut could have sustained no action

to recover the notes, nor a bill to foreclose the mortgage, no such proceedings can be sustained by the orator or by any person claiming under him as assignee.

The important inquiry in the case arises, whether this mortgage debt was paid to Hurlbut while he was the assignee and owner of the mortgage deed and notes. If it was so paid, it is obvious that neither he nor any one claiming under him can sustain this bill. On the assignment of this mortgage by the orator, L. G. Bingham became indebted in its amount to Hurlbut, and any payment made to Hurlbut on the mortgage, or to other persons by his directions, will operate, to the extent of that payment, as a satisfaction of the mortgage debt. In showing payment of these notes the *onus* of proof is cast upon the defendants. The possession of the mortgage deed and notes by the orator is *prima facie* evidence that the notes are due and unpaid. The same presumption arises that the notes were not paid to Hurlbut, as the securities were in his hands at the time of his assignment to Thompson, and of Thompson's assignment to the orator. It appears from the testimony in the case, that in the spring or summer of 1851, Hurlbut became indebted to George W. Chittenden for money borrowed, in the sum of two thousand dollars, and that these notes and mortgage were transferred to him by Hurlbut as collateral security for the payment of that debt. It also appears that on the 2d of October, 1851, Luther G. Bingham paid to Mr. Chittenden the sum of one thousand four hundred and fifty dollars at the request of Mr. Hurlbut, which went for the benefit of Hurlbut on the two thousand dollar note he held against him, and that on that occasion these notes and mortgage were returned by Mr. Chittenden to Mr. Hurlbut. The payment of this money by Bingham was virtually a payment to Hurlbut, and *prima facie* operates as payment to that extent of the mortgage debt which was then due from Bingham to Hurlbut. That is the legal presumption. The *onus* of proof is changed, and if any other application of the money is made, it is for the orator to show the existence of a claim other than the mortgage debt, and that by a mutual understanding the payment was made on that debt. The circumstances attending that payment are very strong in showing that the money was to be applied in satisfaction of the mortgage

debt, and that it was so understood by Bingham as well as by Hurlbut and Chittenden. That Bingham so understood it would seem to be a reasonable inference from the fact that the payment was made the next day after the last note fell due, and was of a sum nearly equal to the amount due on the notes. The small balance remaining due on those notes may have been the reason why Bingham did not call upon Hurlbut to surrender to him the notes and cancel the mortgage deed after they had been returned to Hurlbut by Chittenden. That Chittenden and Hurlbut regarded that mortgage debt as paid is an inference as strong as can be drawn in any case from circumstantial proof. Those notes and mortgage were turned out as collateral security on the note of two thousand dollars. After that payment was made by Bingham the notes and mortgage were given up by Chittenden to Hurlbut, and Chittenden required security of Hurlbut for the balance due on his note. If Chittenden had not regarded that payment as having been made on that mortgage debt he would naturally still have retained them as security for the balance of his debt. The fact that he did surrender them to Hurlbut and insist upon further security can be accounted for on no other hypothesis than that he considered the mortgage satisfied by that payment; so far at least as to afford no security for the remainder of his debt. The facts that the notes and mortgage were received by Hurlbut, and that he made no objection to furnishing other security for the balance due on his note are evidence that he regarded the mortgage debt as paid; otherwise he would naturally have insisted that Chittenden had ample security in his hands by having the possession of the notes and mortgage. If they were satisfactory security for the larger sum, they surely would be sufficient security after the debt had been reduced by that payment. The repeated declarations of Hurlbut as testified to by Smith Benham, William Miller, Lester Hall and Alonzo L. Bingham, that this mortgage debt was paid, are confirmations of the strongest character that the payment was to apply on that mortgage debt. Those declarations were made at various times during the spring and summer of 1851 and 1852; and it is to be observed, that they cannot be regarded as having been made in unguarded moments, and under circumstances which did not call for them, but as understandingly and deliberately

made, and to persons who, from their relations as sureties for Bingham, and otherwise were interested in knowing his pecuniary condition and the true condition of his property. If the question in this case arose between Hurlbut and those witnesses, it would be the judicial sanction of a great fraud to permit this mortgage to be set up as a subsisting claim against them. We perceive no objections to the admission of those declarations as evidence in the case, and to regarding them in the light of original testimony, though they were made after the assignment to Jesse Thompson. In relation to that assignment, it may be observed that it was made as collateral security for signing a note as the surety of Hurlbut to Chittenden, and that this note was afterwards so far paid by Hurlbut that he was permitted to assume and control the security. Thompson had made no payment on that note, nor had he in any way been injured by signing that note as surety. At no time could he have instituted proceedings to enforce the mortgage debt. During all that period Hurlbut was the general owner of those notes and mortgage. He stood in the same relation to the property after the assignment as before it, and the declarations were made after the notes were overdue. So far as the declarations of Hurlbut are concerned, we think they were competent evidence as original testimony, and may be proved by competent witnesses. 1 Greenl. 190, 191. If Hurlbut were foreclosing this mortgage, those declarations would be important testimony against him. They are equally so against his assignees, for they stand in his shoes, have his title and none other, and hold the same subject to the same defenses. Particularly is this true in relation to the orator; for he virtually is the direct assignee of Hurlbut. It appears from the testimony of Hurlbut, that in the fall of 1852 *he paid, or nearly paid the note that Thompson signed, so that Thompson was willing to give up the collateral.* He says " *I then sold the notes and mortgage to Harry Miller, and requested Thompson to assign them to him, which he did.*" The orator stands therefore as he would stand if Thompson had reassigned to Hurlbut, and Hurlbut had assigned to the orator. There is a fact in the case strongly showing that the orator knew of that payment of one thousand four hundred and fifty dollars, and that it was to be applied as payment on that mortgage debt. This inference is to

be drawn from the manner in which the transfer of the notes was made, and in which he required the special guarantee of Hurlbut that the notes had not been paid. No such guaranty is usually, or would naturally be required, unless the persons receiving the paper were aware that it was subject to such a controversy. But however that may be, the fact that he took the assignment long after the notes were due, subjects them in his hands to any payment that may have been made to Hurlbut.

The premises described in the mortgage deed were conveyed by L. G. Bingham to the defendants Hall and Skinner on the 21st of July, 1852. The conveyance was by warranty deed and with covenants against incumbrances. The deed on its face purports to have been executed and recorded on that day, and it is so averred in the bill and admitted in the answers. At the time of its execution Messrs. Bingham, French, Hurlbut, Skinner and Hall were present, and the deed was witnessed by Hurlbut and French. The deed not only purports to convey an unincumbered title, but Hall testifies that he supposed the property was unincumbered, and made the purchase under that belief. Hurlbut knew of that conveyance ; he saw and read the deed and witnessed it. No one can read the testimony, particularly that of Mr. French on that subject, and entertain any misgivings on that question. The silence of Hurlbut during that negotiation, his neglect to disclose the existence of that incumbrance, and his permitting them to complete the purchase under the belief that no such incumbrance existed, if they do not operate as an estoppel, are controlling evidence that he regarded that mortgage satisfied. These circumstances are evidence of too solemn a character to be affected by any other evidence in the case. We entertain no doubt that under the English authorities he would be estopped from setting up that mortgage as an existing encumbrance against Hall and Skinner. We are aware that the orator has testified that he was present at the time of that conveyance, and that Hurlbut then stated *that he held the mortgage,* and that Bingham observed *the mortgage was due and had never been paid.* Hurlbut also testifies to the same fact and that the orator was present. That the orator was with these parties on the 22d fully appears from the testimony, particularly from that of French, by whom the deed and papers were

drawn. It is quite evident that the orator was not present on the 21st when the deed was in fact executed to Hall and Skinner, and that the statements of Hurlbut, if made at any time, were made the next day, and after the conveyance to Skinner and Hall had been perfected. French testifies, however, that he heard no such observations at any time, and Mr. Hall says that none such were made in his hearing. We cannot, therefore, as a balance of testimony, regard the matter as proved in the case, that any claim was made or notice given previous to the conveyance to Hall and Skinner of the existence of that incumbrance. If no such claim or notice was made or given on that occasion it is evidence that he had no such claim, and that he regarded the claim as paid by the application of the money received from Chittenden. In the testimony of the orator and Hurlbut it is stated that at the time of the conveyance to Skinner, Bingham agrred to, and in fact did give to Hall and Skinner, his bond that the premises should be relieved from that mortgage and other incumbrances within sixty days. If in truth such a bond was executed on that occasion for the benefit of Hall and Skinner, and at their request, it is difficult to see how this defense can be sustained; for it would be a solemn acknowledgement on their part that they knew of that incumbrance, recognized its validity and existence, took their deed subject to it, and looked to the bond for their indemnity. In relation to this bond, it is, in the first place, to be observed, that it does not appear ever to have been delivered to Hall and Skinner, or to have ever been in their possession; but on the contrary, it was delivered by Mrs. Bingham to the orator, and by him produced before the master as evidence in the case. Mr. Hall testifies that he never saw or heard of that bond until it was produced by the orator before the master. The testimony of Mr. French, by whom all the deeds and papers were drawn, is very important on this subject. He says that the bond was not drawn on the 21st or 22d of July; that nothing was said, to his recollection, about the mortgage on those days; that the bond was drawn as late as the 24th of July, as appeared from a charge on his books for that service; and that it was then drawn at the request of Mr. Bingham. It is difficult to see for what purpose Hall and Skinner should desire the execution of that bond. They had already the covenants of Bingham that the premises

were free from incumbrances, upon which they had an immediate right of action if any incumbrance existed. The bond did not enlarge their remedy or give any additional security; but on the contrary cut them off from any remedy for the period of ninety days. That circumstance in connection with the testimony in the case, fatally affects the reliability of that bond as evidence. It excites suspicions in all its stages; and the circumstances under which it was executed and retained from the knowledge of Hall and Skinner, may furnish the reason why Mr. Bingham was not introduced as a witness on the part of the defense.

From the several hearings which have been had in this case, and from our subsequent examination of it, we are fully confirmed in the opinion we at first entertained that the money paid by Bingham to Chittenden at the request of Hurlbut, was paid to apply on that mortgage; that it was so understood by the parties at the time; that it was so represented by Hurlbut to Hall and Skinner at the time of the conveyance to them, and that they took a deed of the premises under that belief and with that understanding. Under those circumstances that mortgage should not be set up by Hurlbut or his assignee, as a subsisting incumbrance on the land, as against Hall and Skinner; not even for the trifling balance that remained after the payment of that money by Bingham to Chittenden.

There is another feature in this case which renders this defense wholly insufficient. The payment of the money by Bingham to Chittenden, at the request of Hurlbut, is not disputed; that Hurlbut was the owner of the notes and mortgage at that time; and that they were then in the hands of Chittenden as collateral security for Hurlbut is equally undisputed. Hurlbut is, therefore, under obligation to account for that money, and to account for it on that mortgage debt, unless some other application was made of it consistent with legal principles and the understanding of the parties. If Hurlbut has made such an application, it is in his power, more than in that of any other person, to show the existence of a debt on which the application could be made, as well as the application itself of the money. The *onus* of proof in this matter rests on him, or on those who, as his assignees, claim that such an application was made. The evidence in relation to a

balance due on book and the wool account, is of the most vague and indefinite character. At the time of the payment of the money there was not, nor had there been at any previous time, any act or declaration on the part of Bingham recognizing the existence of such a claim; no books of account or transcripts from them have been produced or offered in evidence. There is the statement of Hurlbut, that he thinks he owed him at that time about eleven thousand dollars, nearly two thousand dollars of which was for money he had advanced for wool; yet it appears, that in October, 1852, after the money had been paid by Chitten-den, and before the assignment of this mortgage to the orator, Mr. Hurlbut stated to A. L. Bingham that Luther Bingham had turned out to him some wool and a piano, which he thought would make him square with Mr. Bingham. The neglect to produce and verify in the usual manner, the books of Mr. Hurlbut, or any transcript of the wool account showing a balance due him on which such an application of the money could be made, or to show an impossibility of producing them, is a strong circumstance in evi-dence that no such account or balance existed. If an action were pending between Hurlbut and Bingham to recover such a balance, the neglect to produce such evidence would warrant a court or jury in finding that no such indebtedness existed, even against the vague and indefinite declarations which it is said were made by them, and which have been referred to in some portions of the testimony. In the proof of that indebtedness there should be some substantial, reliable testimony, the best which the nature of the case admits of; and upon which we can act with some conscious safety. Such testimony is necessary to make even *prima facie* proof as between the parties; much more should that testimony be required when, as in this case, the rights of third persons are affected; when the object and effect of the testimony is to fasten the payment of the debt upon these defendants, by causing it to rest as an incumbrance upon premises which they have purchased.

We do not not find it necessary in this case to examine the question, what application of the money the law would make if this wool balance had existed at the time of the payment, as we think no such claim is proved to have existed. But if such a claim did exist, we are satisfied from the proof, and the circum-

stances under which the payment was made, that it was the intention and understanding of all interested in the matter that the payment was to apply on that mortgage debt.

It must be confessed that the case is somewhat complicated in its details, and perhaps it is impossible to reconcile all the testimony which has been introduced by the parties. Still there are prominent features about it which cannot be overlooked in the examination of the case, and which lead to the result to which we have arrived; a result which does no violence to any part of the testimony upon which we feel we can act in safety.

The decree of the chancellor is affirmed with costs.