WOLFRED N. PHELPS AND LIZZIE M. PHELPS *v.* LYDIA
M. ROOT.

January Term, 1906.

Present: TYLER, MUNSON, WATSON, POWERS, and MILES, JJ.

Opinion filed May 11, 1906.

*Mortgages—Foreclosure by First Mortgagee — Payment by
Second Mortgagee—Opening Decree—Bill to Redeem—
Equitable Estoppel—Equity Pleading—Answer as Evi-
dence—Review of Master's Findings—Evidence of
Value—Unfulfilled Offer—Attorney and Client—Burden
of Proof.*

In a suit in equity for leave to redeem a certain farm whereof the
orators were mortgagors, a bank the first mortgagee, and defendant
the second mortgagee, it appeared that the bank had obtained a
decree of foreclosure against the orators, the defendants, and B.;
that before the expiration of the time of redemption fixed by said
decree defendant orally agreed with the orators that if B. did not
pay said decree defendant would pay it and give the orators a
chance to redeem; that the orators had a right to and did rely upon
this agreement, and made no effort to pay the decree; that in pur-
suance of this agreement, and partly for her own protection, de-
fendant arranged with the bank that if said decree became absolute
she would pay what the property had cost the bank, and the bank
should deed it to her; that in accordance with this arrangement
defendant paid the decree after it became absolute, and the bank
executed and delivered to her a warranty deed of the farm; that
by this arrangement neither the bank nor the defendant intended

that defendant should lose her equity of redemption in the farm, and that it was the equity of redemption and not the title to the farm that was the subject-matter of the agreement between them. *Held*, that defendant did not acquire absolute title to the farm, but that there was a waiver of forfeiture by the bank and a redemption of the farm by defendant, the effect of which was, by operation of law and regardless of said agreement between the defendant and the orators, to open the decree as to the latter and as to all persons interested in the property.

Although said agreement between the orators and defendant was oral, it appearing that the orators were willing and offered to redeem and that defendant refused to carry out the agreement, defendant is estopped in equity from denying the orators' right to redeem, notwithstanding the Statute of Frauds.

The answer to a bill in equity is evidence as far as it is a direct and explicit denial of the allegations in the bill; but if such denials are on information and belief, they are not evidence. Nor is the answer evidence of new matter therein alleged in confession and avoidance of the charge made in the bill.

Denials in an answer must be overcome by what is deemed equal to the testimony of two witnesses. But circumstantial evidence may take the place of one or both witnesses, if of equal weight and credibility.

Findings of a master will neither be reviewed nor revised where there is evidence to sustain them, unless fraud or corruption is shown.

Where there is no finding by the master that the relation of attorney and client existed between the orators and a witness produced by them, defendant's objection, on that ground, to the testimony of the witness cannot avail. On this question the burden was on defendant.

An offer by defendant to sell her farm at a specified price is evidence of its value as against defendant, notwithstanding that, because of a tenant's unexpired term, defendant was unable to fulfil the offer.

Evidence examined and held sufficient to warrant the master in making certain findings.

APPEAL IN CHANCERY, GRAND ISLE COUNTY. Heard at Chambers, July 31, 1905, on pleadings, master's report, and exceptions thereto. *Rowell*, Chancellor. Exceptions overruled. Decree of redemption for the orators "according

to the prayer of the bill and the agreement found by the master." The defendants appealed. The prayer of the bill is: "That the said Lydia M. Root may be ordered, and decreed to render an account of the rents, profits and products of said premises since she went into possession of the same, and that these complainants may be ordered and allowed to redeem said premises by the payment of the amount of said decree and the amount of said note and mortgage held as hereinbefore stated by said Lydia M. Root after deducting such rents and profits as shall have been found on an accounting from the amounts of said decree and mortgage and that these complainants may have ample time to redeem said premises in accordance with the understandings, agreements and representations of the said Lydia M. Root with and to these complainants."

The body of the letter, Exhibit 3, referred to in the opinion, is as follows: "Wolfred asked me to write you about our talk the other day. I had previously told Wolfred and Linus that I should require that the debt be reduced to six thousand dollars. Wolfred asks now for three months' time in which to make that reduction. I will agree to that if it will surely come then. The semi-annual interest at the Savings Bank they are to pay regularly and five hundred dollars yearly on the principal. This year, the first payment reducing the debt, to be reckoned in the five hundred. Wolfred said something about the payments being a little less after this year, so if they wish, we will say the yearly payment after this year be four hundred dollars instead of five. They are to pay all taxes, also put necessary repairs on the buildings, etc. Should the eighteen acres of track land be sold to the Association the purchase money is to be applied on the principal aside from the yearly payments of four or five hundred dollars (as may be

agreed upon). If the Association would be likely to make any changes that would be detrimental to the value or sale of the rest of the place, of course, I should prefer not to let them have it as was spoken of. I am glad you are coming back to South Hero to live and I hope you will be so prospered as never to regret your undertaking. Today is cold and stormy, real winter weather again. I am anxiously looking forward to Spring. I am gaining in strength but it seems to me slowly. Perhaps I am asking for too much, I know I need patience to wait.

Sincerely your friend,<br>L. M. Root."

*Farrington & Post,* and *D. G. Furman* for the orators.

The Statute of Frauds does not apply to this case. *Wood-ward* v. *Cowdry,* 41 Vt. 496; *Shellinberger* v. *Ransom,* 25 L. R. A. 564.

*Alfred A. Hall* and *Lee S. Tillotson* for the defendant.

The alleged agreement between defendant and the bank was simply an oral contract for the purchase of land, and so within the Statute of Frauds. *Scott* v. *McFarland,* 13 Mass. 311; *Lovell* v. *Leland,* 3 Vt. 581; *Wheeler* v. *Reynolds,* 66 N. Y. 227; *Levy* v. *Brush,* 45 N. Y. 589.

A *subsequent* wrongful detention of the title is not enough to take the alleged agreement out of the Statute. *Fennock* v. *Clough,* 16 Vt. 500.

WATSON, J. The Burlington Savings Bank, the owner of the first mortgage on the lands described in the bill, brought its petition to foreclose the same at the April term, 1892, of the court of chancery in the county of Chittenden, making the

orators in this case and one J. D. Beeman, the then owners of the equity of redemption, and Lydia M. Root, the defendant in this case, the owner and holder of a second mortgage, parties defendant. A decree was obtained that unless the defendants therein pay to the bank the sum of $4,167.91 with interest from the 11th day of April, 1892, to the time of payment, and costs of suit, on or before the 11th day of April, 1893, they should be foreclosed and forever barred from all equity of redemption in the premises. Payment was not made in accordance with the terms of the decree, and the title to the property, so far as appeared of record, became absolute in the bank. The master finds however that on the first day of June, 1893, this defendant, Lydia M. Root, in accordance with an arrangement made between her and the bank some considerable time before the expiration of the time of redemption as fixed by the decree, paid to the bank the full amount of the decree with interest and costs including the amount paid to its solicitor above the taxable costs, and the sum paid for recording the decree and for the deed from the bank to her, in the aggregate $4,476.93, and on or about the 8th day of the same month pursuant to the arrangement the bank conveyed the property to her.

At the time of making this payment to the bank, there was due to the defendant on the notes secured by the second mortgage $1,798.25, making with the sum paid to the bank, $6,275.18.

It is further found that as early as in November, 1892, the defendant agreed with the orators that she would assume the debt to the bank, and that in the event that Beeman did not pay the decree she would pay it and give the orators a chance to redeem and that Exhibit 3, a letter from the defendant to the orator, Lizzie M., fairly expresses the understanding and

agreement between the defendant and the orators, as finally made; that before the expiration of the time of redemption, in conformity with this agreement and partly for her own protection, the defendant made an arrangement with the bank to the effect that if the decree became absolute and the property came to it, she should pay whatever the property cost the bank at the time of deeding, and the bank would deed it to her.

The defendant claims that the agreement between her and the orators alleged in the bill and found by the master as above stated, is a contract for the sale of land and therefore within the Statute of Frauds. The master has found, however, that neither the bank nor the defendant intended to enter into any arrangement whereby she would lose her equity of redemption in the premises, and that it was the equity of redemption and not the title to the farm that formed the subject of the arrangement between them. This being so, the defendant did not acquire absolute title to the property from the bank. She was a second mortgagee and a party defendant in the suit to foreclose the first mortgage. Under the terms of the decree the time of redemption would have expired as to all defendants therein at a common specified time. Before the expiration of the time limited the bank agreed with this defendant to let her redeem after the time had expired, and deed her the property. Pursuant to this agreement, she paid the decree after it had in terms become absolute, and the bank received the money. Here was a waiver of the forfeiture by the bank and a redemption of the property by the defendant, the effect of which was, by operation of law and without regard to any agreement between the defendant and the orators for that purpose, to open the decree as to the latter and as to all persons interested in the property. *Smalley* v. *Hickok,* 12 Vt. 153; *Woodward* v. *Cowdry,* 41 Vt. 496; *Ward* v. *Seymour,* 51 Vt.

320; *Cooper* v. *Cole,* 38 Vt. 185. By the payment of the decree and the receipt of the warranty deed, the defendant obtained the same interest in and title to the premises that the bank had under its mortgage with the right in the owners of the equity of redemption to redeem. *Collamer* v. *Langdon, 29* Vt. 32; *Oakman* v. *Walker,* 69 Vt. 344.

A decree for the orators might well be placed upon this basis, but inasmuch as the decree of redemption below was "according to the prayer of the bill and the agreement found by the master," it is necessary to consider the case with reference to the question raised upon the Statute of Frauds.

The fact is found that the defendant, after having come to the understanding and agreement with the orators as before stated and up to the expiration of the time in which the latter could redeem, never informed them or either of them that she did not intend to let them have the farm in accordance with their said understanding and agreement, and that the orators relied upon this understanding and agreement, and had a right so to rely, and so relying, made no effort to raise the money and pay the decree to the bank. The master further states that if the testimony referred to of either Mirion Landon or Fred Allen tended to show that Wolfred N. Phelps, in behalf of the orators, was ready and offered to carry out and perform the said agreement and understanding, then he finds that the orators were ready to perform and offered upon their part to perform and carry out the same. The testimony had the tendency given it, hence these facts must be considered as established. The further fact is found that the defendant on her part refused to carry out the agreement and understanding in this respect. In these circumstances, notwithstanding the agreement was oral, the defendant is estopped in equity from denying the orators' right to redeem the property. *Woodward*

v. *Cowdry,* before cited; *Turner* v. *King,* 2 Ired. Eq. 132; 38
Am. Dec. 679; *Schroeder* v. *Young,* 161 U. S. 334, 40 L. ed.
721. In the case last cited the Court, speaking through Mr.
Justice Brown, said: "Defendant relies mainly upon the fact
that the statutory period of redemption was allowed to expire
before this bill was filed, but the court below found in this
connection that before the time had expired to redeem the
property, the plaintiff was told by the defendant Stephens that
he would not be pushed, that the statutory time to redeem
would not be insisted upon, and that the plaintiff believed and
relied upon such assurances. Under such circumstances the
courts have held with great unanimity that the purchaser is
estopped to insist upon the statutory period notwithstanding
the assurances were not in writing and were made without
consideration, upon the ground that the debtor was lulled into
a false security."

To the findings in the report, that the defendant agreed
with the orators to assume the debt at the bank, in the event
Beeman did not pay the decree, and give them a chance to re-
deem; that pursuant to this agreement, the defendant made the
agreement with the bank; and that it was the equity of re-
demption and not the legal title to the farm which formed the
subject of the arrangement between the bank and the de-
fendant, exceptions were severally taken as not warranted by
any evidence in the case. The relation of these facts to one
another is such that the evidence bearing upon them may better
be considered together. In connection therewith our attention
is called to the answer. The answer is evidence as far as it is
a direct and explicit denial of the allegations of the bill. But
if the denials are on information and belief, it is not evidence.
Or if the answer sets up other matters in confession and avoid-
ance of the charge made in the bill, it is not evidence of such

other matters.   And so far as the answer is evidence, it is to
be weighed the same as it would be if it appeared in a depo-
sition outside of defendant's pleading.   The rule is well settled
that denials in an answer must be overcome by what is deemed
equal to the testimony of two witnesses.   Yet in so doing,
circumstantial evidence may take the place of the testimony of
one or both witnesses, if of equal weight and credibility.   *Veile*
v. *Blodgett,* 49 Vt. 270; *Field* v. *Wilbur,* 49 Vt. 157.   The
answer as evidence is to be weighed like other evidence.   It
gains no factitious weight because it happens also to be one
of the pleadings.   As evidence it is subject to the infirmities of
evidence.   *McLane* v. *Johnson,* 59 Vt. 237.

On November 30, 1892, the defendant wrote a letter to
the orator, Wolfred N., which appears to have been in reply
to one he had previously written her, in which she says: "You
must think it strange that I do not reply to your letter, but
Thanksgiving, threshers and other hindrances are to blame,
not me.   I think I comprehend the situation and as soon as
I can go to Burlington I will try to arrange to assume the
matter myself, but as I understand, it must be subject to the
parties during the whole year for redemption, so I cannot bar
Mr. B. out from paying up if he chooses.   It is to be hoped
that he will not choose, but it would be strange indeed if he
let it all slip out of his hands.   I believe he will do something if
he possibly can.   * * * I shall go to B. sometime before very
long and will see what can be done.   Hoping for the best, I
remain," etc.

Dr. Petty, the defendant's physician, testified that in the
winter of 1893 he was at her house on a professional visit, and
she, knowing that he was going to Burlington the next day,
asked him to do an errand for her at the Burlington Savings
Bank with Mr. Smith, president of the bank; that she asked

the witness to say to Smith that she would take up the mortgage which the bank held on the Phelps place; that when the witness delivered this message to Smith at the bank, he made some reply which gave the witness "the opinion" that it was satisfactory to the bank, and the witness so reported to the defendant on his next visit to her; that on the occasion last named when he reported to the defendant Smith's reply she went on to say that the reason she did this was to save herself, that she said she did not want the farm, she didn't need it, it would be a nuisance to her; that she felt sorry for Wolfred and Lizzie; that Lizzie had put her money in the farm and she was sorry to have her lose it and if Wolfred could redeem the place within five years at its cost to her she would allow him to do it; that the witness had other conversations, several times, with her during her sickness the same winter, which the witness could not repeat exactly, but "of the same drift as of the first." Linus Phelps testified that on an occasion in February, 1893, he and the orator, Wolfred N., were at the defendant's house and talked with her about the farm; that "she said she would make an arrangement or had made an arrangement, one or the other, with the bank;" that the amount she was to pay the bank or the amount of the decree was spoken about; that it was then talked between them in substance that the witness and Wolfred would not attempt to redeem from the bank, "that we should let it go, that was the understanding," "because she said that we could redeem it from her just as well." The witness had also heard her say that Wolfred could have the place by paying her what it cost her. C. P. Smith, the president of the bank, testified that the bank had an arrangement with the defendant that it would foreclose its mortgage with the understanding that she should pay the bank in case the property came to it, all that the property had cost it and re-

ceive a deed from the bank, and in short, that this arrange-
ment was carried out.

Mirion Landon testified: "Q. What did she (defendant)
say if anything in reference to the acceptance of the terms by
Mr. Phelps at any of the conversations you had with her?
A. She told me that her terms were acceptable to Mr. Phelps;
that Mr. Phelps agreed to her terms." George Tracy testified
that he talked with the defendant several times in regard to
the orators' redeeming the farm, and that she said she wasn't
going to turn Lizzie off, that she was going to give them a
chance to redeem. "Q. Did she ever say anything to you in
reference to any agreement that she had made with them or
either of them in reference to the redemption of the farm in
question, if so state about what she said? A. I think she has,
I am quite certain she said she had agreed to give them a
chance to redeem it and she was agoing to." Other evidence
by way of witnesses, letters, and circumstances having the
same tendency and of more or less force was before the mas-
ter. In view of the evidence, the exceptions noticed must be
overruled.

Exceptions were also taken upon the same ground to
other findings in the report, but it is not necessary to specify in
detail concerning them. It is enough to say that a careful
examination of the record shows evidence sustaining all the
facts found to which such an exception was taken. The rule
is firmly fixed that the findings of a master will neither be
reviewed nor revised where there is evidence to sustain them
unless fraud or corruption is shown. *Waterman* v. *Buck,*
58 Vt. 519; *Howard* v. *Scott,* 50 Vt. 48; *Merrill* v. *Railroad,*
54 Vt. 200; *Randall* v. *Randall,* 55 Vt. 214; *Security Co.* v.
*Bennington Monument Ass'n.* 70 Vt. 201.

The testimony given by A. G. Whittemore, a witness produced by the orators, was objected to, the defendant claiming that the relation of attorney and client existed between her and the witness, hence any communications between them were confidential. And the same objection was made to the admission of letters written by the witness to the defendant and by her to the witness with reference to the foreclosure, the decree, and the conveyance of the property. But this objection cannot avail, for such relation is not found to have existed. On the contrary the finding is that in respect to the foreclosure and conveyance the witness was acting under the authority and employment of the bank. On this question the burden was with the defendant. *Earle* v. *Grout,* 46 Vt. 113.

As tending to show the value of the farm, the testimony of Chlorus C. Bliss was received, subject to exception, to the effect that on May 16, 1895, he called on the defendant to see about the purchase of it and got her price which was $10,000 and she was to consult her advisor and let the witness know by letter or telegraph the next day; that she telegraphed the witness May 21 that he could have the farm as talked. But later the trade fell through because of the unexpired term of a tenant on the farm. It is urged in argument that a bare offer is not evidence of value, and that an offer without ability to perform cannot be considered as a *bona fide* offer. The evidence tended to show what the defendant considered the value to be, and like any other act of a party against his interest, was admissible.

The defendant contends that the master did not comply with the order of Chancellor Munson recommitting the report for more specific findings respecting the agreement between the orator and the defendant whereby she was to pay the decree and let them redeem, the persons between whom and the manner in which the understanding was arrived at, &c.; the date

and terms of defendant's arrangement with the bank as nearly and fully as the evidence would permit; whether Whittemore was or was not acting in this matter as attorney for defendant; and to state or refer to all the evidence upon which such findings were based in such a way as to show that the evidence so reported was all that the master relied upon. The defendant urges that this Court should see that such orders are complied with.

It is unnecessary to consider when or under what circumstances, if ever, a case would be remanded with directions for the recommittal of a master's report for such purpose. Certainly the proper determination of this case does not require it, for we think the master made a substantial compliance with the order, concluding his supplemental report by saying "a type written copy of the testimony returned herewith, which may be referred to, and the exhibits referred to, are all the evidence from which I have found any facts, and if none of the testimony or exhibits referred to tend to support any finding of fact, then I do not find such fact."

From the time the defendant received her deed from the bank she had the control and possession of the farm in question until her death, December 23, 1898, and since her death her executor has had control and possession thereof. It was not, however, deemed advisable by the parties to take the evidence for an accounting of the rents and profits until the question of the right of the orators to redeem had been decided.

*Decree affirmed and cause remanded with mandate that an accounting of the rents and profits of the farm in question be had, and the sum due in equity to the defendant be ascertained. On the coming in of the report, let a decree be entered for the orators according to mandate with costs.*