Max Mears *v.* The Farmers Cooperative Fire Ins. Co.

May Term, 1942.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 6, 1942.

520

*McNamara & Larrow* for the plaintiff.

*A. Pearley Feen* and *Wayne C. Bosworth* for the defendant.

SHERBURNE, J. This is an action upon a fire insurance policy covering farm buildings and produce therein. The defense was that the buildings stood upon ground which was not owned by the insured in fee simple in violation of a provision of the policy, and that consequently the policy was entirely void. The plaintiff made, and now makes, no claim but that the policy was void for such reason, but pleaded estoppel and waiver arising from the sending of an assessment notice after the fire and the acceptance of payment thereon. The sole question here is whether the court erred in overruling defendant's motion for a directed verdict upon these issues.

Viewing the evidence most favorably for the plaintiff it tended to show the following facts: The policy was for the term of 5 years from August 1, 1935, to August 1, 1940. The fire occurred July 12, 1940. It was investigated by Mr. Peet, president of the defendant company, when the defendant first learned that the buildings had been on land not owned by the plaintiff, and shortly thereafter the plaintiff was informed that for this, and another reason not necessary to mention, the defendant did not feel justified in paying the loss. At some time prior to September 1, 1940, defendant's executive committee levied an assessment upon all outstanding insurance, and on that date a

notice of an assessment upon plaintiff's policy was mailed to him at his address in Milton in the regular course of business. This was a printed notice which recited that the executive committee had ordered an annual assessment at different stated rates upon the four classes of risk and requested payment within 30 days from date to defendant's undersigned secretary, whose signature was printed at the bottom. In blanks for the purpose were written plaintiff's name and address, the number of his policy, the class of risk, and $10.80 the amount of assessment on the policy. The details of sending out such notices were performed by clerks in the defendant's home office in Middlebury. The plaintiff received this notice on or about its date, but did nothing about it until around July 1, 1941, when he consulted his attorneys and authorized them to pay it. Plaintiff's writ was served upon the defendant on July 10, 1941, and about two hours afterwards on the same day a law student in the office of plaintiff's attorneys entered defendant's home office where he observed two men, one doing clerical work and the other sitting at a desk. He was directed to a Miss Baldwin and went to her desk and presented the assessment notice with $15.00, which she took. She looked at the notice and asked ''Have you seen Mr. Peet?'' He answered ''No, they asked me to pay this while I was in Middlebury.'' She then got up and went to a file and looked at a policy which she pulled out. She then looked at an entry book. He saw the name ''Max Mears'' and a few lines below the words ''Not renewed'' written in colored pencil. She then went back to her desk and said there was $1.08 due. She then receipted the notice and after going to another desk gave him $2.12 in change. Miss Baldwin did clerical work in connection with cancellations and expirations, but had no authority to receive money from those who came to pay premiums or assessments and did not have access to the cash drawer. There were two other girls in the office who sometimes took money in the absence of Mr. Peet, but they took it not as being authorized, but merely as persons to leave it with. When Mr. Peet would come in they would give it to him, and he would credit it on the books. Cash was seldom received in the office at that time of year. It usually came by mail. Mr. Peet was away on July 10, 1941. On the next day Miss Baldwin gave him the money she

had received from the law student. He then had a check for the amount made out in favor of the plaintiff and turned it over to defendant's attorney, who, under date of July 12, 1941, mailed it to plaintiff's attorneys with an explanatory letter. Mr. Peet, since the sending of the assessment notice, had succeeded to the office of secretary, and in July, 1941, was both president and secretary.

A waiver is an intentional relinquishment of a known right, and the essence of it is voluntary choice, not mere negligence. *Burlington Grocery Co.* v. *McGreggs*, 97 Vt. 63, 73, 122 Atl. 479; *Barber* v. *Vinton*, 82 Vt. 327, 334, 73 Atl. 881. The intention need not be expressed, but must be evidenced by conduct of an unequivocal character. *Barber* v. *Vinton, supra; Rogers v. Whitney*, 91 Vt. 79, 99 Atl. 419; *Dunbar* v. *Farnum*, 109 Vt. 313, 322, 196 Atl. 237, 114 A. L. R. 996; *West River Power Co.* v. *Bussino,* 111 Vt. 137, 139, 11 Atl. (2d) 263.

Waiver and estoppel are distinguished in *Webster* v. *State Mutual Fire Ins. Co.*, 81 Vt. 75, 80, 69 Atl. 319. It is there said that a waiver does not necessarily imply that one has been misled to his prejudice, whereas an estoppel always involves this element. A waiver may amount to an estoppel, but not necessarily so. We need not determine whether the evidence shows that the plaintiff, in reliance upon the assessment notice, was induced to put himself in a prejudicial position, which is an essential element of an estoppel. *West River Power Co.* v. *Bussino, supra; Vinton* v. *Atlas Assurance Co. Ltd.*, 107 Vt. 272, 278, 178 Atl. 909; *Weinberg* v. *Norton*, 107 Vt. 279, 292, 178 Atl. 913; *Stevens* v. *Blood*, 90 Vt. 81, 86, 96 Atl. 697.

As applied to insurance cases our rule is that when an insurer with full knowledge elects not to take advantage of a forfeiture, he waives it, and cannot assert it in defense, though the insured was not misled to his prejudice. Such a waiver may be express or implied, before or after the forfeiture. *Pellon* v. *Conn. Gen. Life Ins. Co.*, 105 Vt. 508, 522, 168 Atl. 701; *Cummings* v. *Conn. Gen. Life Ins. Co.*, 102 Vt. 351, 360, 148 Atl. 484. An insurance company which thus waives a forfeiture is bound to treat the contract of insurance as though no forfeiture had occurred. *Pellon* v. *Conn. Gen. Life Ins. Co., supra; Francis* v. *London Guarantee & Accident Co.*, 100 Vt. 425, 430, 138 Atl. 780.

Intent lies at the very basis of the doctrine. The defendant could not treat the policy as void for the purpose of defense, and at the same time treat it as valid for the purpose of collecting assessments. 29 Am. Jur. Insurance Sec. 857. It necessarily follows that if the defendant intentionally levied an assessment upon plaintiff's policy and demanded the same of him, it took a position inconsistent with its former claim and recognized the validity of the policy. Unexplained, the levy and notice were evidence from which the jury was entitled to find a waiver and an election not to take advantage of the forfeiture. It is true that the circumstances strongly tend to show that the levy and demand were made inadvertently. Of course there was no waiver in this respect if the notice was sent by reason of mistake, as the element of intention would be lacking. This is well illustrated in *Ryan* v. *Rockford Ins. Co.*, 85 Wisc. 573, 55 N. W. 1025. It is significant, however, that the defendant failed to produce as witnessess any of the clerks who attended to the details of making and sending out the assessment notices and who were the only persons who could testify directly to the point of mistake or inadvertence.

Since there was sufficient evidence on the issue of waiver to warrant submitting the case to the jury it is unnecessary to discuss the other features of the case. The motion for a directed verdict was properly overruled.

*Judgment Affirmed.*