## Anatole Trudeau et al v. Roger Lussier et al
[189 A.2d 529]
January Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 6, 1963

*Lee E. Emerson* for the plaintiffs.

*Reginald B. McShane* for the defendants.

**Holden, J.** This action in equity seeks an accounting and injunctive relief in connection with two promissory notes given by the plaintiffs to the defendant Lussier's assignor, Angus McPherson. The predominant obligation is in the amount of $16,158, dated August 18, 1955, and was secured by real and personal property mortgages on the plaintiffs' farm, livestock and farm machinery in Charleston, Vermont. The other note is in the amount of $3,200, dated July 25, 1952 and is secured by a mortgage on property of the plaintiffs situated in Island Pond, Vermont. These notes and mortgages were pledged by the payee McPherson to the Howard National Bank and Trust Company, sometime prior to February 1, 1958. The principal defendant, Lussier, acquired the notes and mortgages for value on October 29, 1959.

The defendant Lussier instituted an action at law on March 4, 1960 to collect the balance due on these obligations and has attached

all of the plaintiffs' real and personal estate. On March 4, 1960 the defendant Lafoe, sheriff of Caledonia County, took into his possession the personal property secured by a chattel mortgage given to secure the larger note and advertised the mortgaged property for sale March 30, 1960, for breach of its condition.

The complaint prays that these proceedings be enjoined pending an accounting between the parties. The plaintiffs further ask for an opportunity to redeem the mortgaged property for the sum found to be justly due and owing on the notes in suit.

The chancellor made extensive findings which included a detailed statement of the amounts he determined to be due on each obligation. The results of these computations were incorporated in the decree. The complaint was ordered dismissed and equitable relief denied.

In this appeal by the plaintiffs, one of the errors assigned relates to the note for $3,200. The chancellor computed the amount of principal and accrued interest to be $2,947. The plaintiffs seem to contend this amount was reached by the chancellor on an erroneous exclusion of evidence showing tender of payment.

The plaintiff Anatole Trudeau testified that he had interested a man named Woodward in purchasing the Island Pond property which secured this note. The mortgagee McPherson agreed to accept the sales price of $4,000 and apply the proceeds to the plaintiffs' obligation. Plaintiffs' counsel then inquired, "Q. And then did he (McPherson) back out? A. He didn't come very soon, and Mr. Woodward had to wait long time and Mr. Woodward change his mind."

The plaintiffs then offered as an exhibit the quit claim deed which they had caused to be prepared to accomplish the transfer to Woodward. The offer was made in connection with Trudeau's testimony, to substantiate the plaintiffs' claim that they should not be held liable on the note for $3,200.

■ The transaction in question could not operate to satisfy the plaintiffs' obligation unless it constituted a valid tender. According to the plaintiff's own testimony, the sale failed because the purchaser changed his mind. The proposed method of payment which the plaintiffs had worked out was conditioned on a completed sale. A tender, to be effective, must be without conditions. *Holton* v. *Brown*, 18 Vt. 224, 226. There is nothing about the deed which was proposed as an exhibit which cures the deficiency in the plaintiffs' claim

of tender. The offer was without probative value and was properly excluded.

The main concern of this appeal is the note in the amount of $16,158. The history of this obligation reaches back to the plaintiffs' purchase of the Charleston farm from McPherson on July 25, 1952. The sale price of the bare farm was $10,000 and was subject to a first mortgage to the Federal Land Bank of Springfield, Massachusetts. This mortgage indebtedness the grantor McPherson agreed to pay and discharge. The $3,200 note and mortgage on the plaintiffs' Island Pond property, referred to above, was given as a down payment on the purchase price. The remaining consideration for the farm, in the amount of $6,800, was included with the plaintiffs' obligation to McPherson for the purchase of livestock and farm machinery to total the amount of $14,752.43. The plaintiffs executed and delivered their promissory note in this amount to McPherson. The instrument was dated July 25, 1952, payable, ". . . One third out of each milk check for each two-week period, regardless of the Milk Company to which milk is sent and in no event less than $100.00 per month each and every month during the life of this obligation. Each payment to be applied first to the accrued interest and the balance to the principal until the whole obligation shall be paid."

The note also contained an acceleration clause which provided: "In the event of default of any payment for over 60 days, the total amount of this note shall become due and payable . . ." This instrument was secured by a real estate mortgage on the Charleston farm and a personal property mortgage of the farm machinery and livestock which McPherson had acquired and sold to the plaintiffs.

Later, on August 18, 1955, the plaintiffs executed and delivered an additional note to Angus McPherson in the amount of $16,158. This instrument was payable on demand. The amount specified was constituted by including the unpaid balance of principal and interest on the prior note of $14,752.43, a balance due on the purchase of cattle by McPherson for the plaintiffs in 1952, reimbursement of McPherson for having paid and satisfied a first mortgage indebtedness on the plaintiffs' Island Pond property, taxes and fees.

This instrument, with the note of $14,752.43 and the $3,200 note, was later transferred by McPherson to the Howard National Bank and Trust Company, together with the various instruments given to secure these obligations. On February 1, 1958, the plaintiffs executed

an additional chattel mortgage to the Howard Bank to further secure its assignment from McPherson. The printed portion of this instrument provides for "payments to be made in accordance with all promissory notes given, including any renewals thereof in whole or in part; . . ."

In the following year, October 29, 1959, both McPherson and the Howard Bank endorsed and assigned all of their interests in the Trudeau notes, with their mortgage security, to the defendant Lussier. The chancellor found that at the time of this transfer the note in the principal amount of $16,158 was complete and regular on its face and that Lussier accepted it in good faith and for value, without notice of any infirmity or defect. It was further determined that the note was not overdue. The court concluded that the defendant Lussier acquired, and continues to hold the instrument as a holder in due course.

■ This was in error. On its face, the note was payable on demand. It was transferred to Lussier more than four years after its date of issue. It was then an obligation long past maturity.

The Uniform Negotiable Instruments statute provides: When an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course. 9 V.S.A. §423.

■ What constitutes an unreasonable length of time, where there is no controversy as to the dates of issue and subsequent negotiation, is purely a question of law. *Camp* v. *Scott and Clark, Trustee*, (1845) 14 Vt. 387, 390; *Paine* v. *Central Vermont Railroad Company*, 118 U. S. 152, 6 S.Ct. 1019, 30 L.Ed 193, 197; see also annotation, 60 A.L.R. 649. Since the *Camp* case, it has become settled in this jurisdiction under our statute and decisions, that a demand note, transferred two months after its issue, is overdue. *VanDyke* v. *Grand Trunk Railway*, 84 Vt. 212, 233, 78 Atl. 958, Ann. Cas. 1913A 640; *Cameron* v. *Bailey*, 117 Vt. 158, 160, 86 A.2d 643. And this infirmity subjects the obligation to all the equities and defenses prevailing between the original parties. *Miller* v. *Bingham*, 29 Vt. 82, 85; *Darling* v. *Osborne*, 51 Vt. 148, 156; *VanDyke* v. *Grand Trunk Railway, supra,* at 234.

The court's misconception of the defendant Lussier's status as a holder in due course apparently led it into further error. Evidence

of admissions made by McPherson concerning his obligation to pay the Federal Land Bank mortgage was excluded.

The plaintiffs claimed this undertaking by McPherson was never fulfilled and that they were entitled to credit for payments made to the federal agency in discharge of this obligation of McPherson. The defendant contended the plaintiffs released McPherson from this obligation in return for the satisfaction of an indebtedness incurred by the plaintiffs in the purchase of hay and additional farm machinery. This claimed indebtedness was not included in the subsequent consolidation of obligations expressed in the note of $16,158. The court found for the defendant on this issue and cited a Loan Transfer Application and Assumption Agreement with the Federal Land Bank, of unspecified date in 1952, in support of the finding.

At the trial, to overcome the defendant's claim in this regard, the plaintiffs offered to show a conversation between Trudeau and McPherson in 1959 to the effect that McPherson would give the plaintiffs credit on the note for $16,158 for the payments made by them to the Federal Land Bank. The offer was excluded.

The plaintiffs further offered to show through the witness Blais, a former representative of the Federal Land Bank Credit, that as late as 1958 McPherson had acknowledged his continuing obligation to pay the Federal Land Bank mortgage indebtedness. The court rejected the offer as hearsay.

Both of these offers were admissible and do not offend the hearsay rule. 4 Wigmore, Evidence §1049 (3d Ed.). The error in the rulings to the contrary was saved by proper exceptions.

■ The declarations and admissions of the former holder of a note and mortgage, during the time of his ownership, are admissible as primary evidence against his successor in interest. *Wheeler* v. *Walker*, 12 Vt. 427, 430; *Miller* v. *Bingham, supra,* 29 Vt. at 88; see also *Waterman* v. *Moody,* 92 Vt. 218, 230, 103 Atl. 325; 4 Wigmore, Evidence §1084, p. 158 (3d Ed.) ; 8 Am. Jur., Bills and Notes, §1041; 31 C.J.S. Evidence, §333b, p. 1108. Since the finding was reached without full consideration of admissible evidence bearing on the issue, it cannot stand.

The plaintiffs' remaining assignment of error relates to the question of whether the defendants' right to claim the total amount due on the note of $16,158 has been waived. The issues of waiver

and estoppel were pleaded in the plaintiffs' replication to the defendants' answer. In substance, it is claimed that the payee McPherson agreed that the note for $16,158 was to be paid by application of the proceeds of one third of the milk checks and if such payments totaled $1,200 a year, and averaged $100 monthly, the notes would not be considered delinquent. This claim is at variance with the provisions for payment of the first note of $14,752.43, for that instrument required payment of at least one hundred dollars each month. The court found against the plaintiffs on this claim and reported:

"27. The provision and terms of payment as set forth in the note for $14,752.43 and the note for $16,158.00 remain as designated therein. The Court fails to find any agreement entered into with the Plaintiffs which changes the terms of payment.

"28. The Court is unable to find that the acceptance by the original payee and mortgagee Angus J. McPherson or the acceptance by the Defendant herein of the Plaintiffs' payments of one-third of the proceeds from the sale of the milk were accepted by them under conditions or circumstances as to now estop the Defendant Lussier from claiming that the terms of payment have not been complied with."

These findings are justified by the evidence. They settle the point that there was no estoppel to operate against the defendant, since there was no conclusive showing that the plaintiffs relied on the acts or statements of the defendant and his predecessors in title nor that they were misled to their detriment. *Boynton* v. *Hunt,* 88 Vt. 187, 189, 88 Atl. 736; *Weinberg* v. *Norton,* 107 Vt. 279, 292, 178 Atl. 913; *West River Power Co.* v. *Bussino,* 111 Vt. 137, 139, 11 A.2d 263.

But the absence of these factors in the proof and findings do not conclude the issue of waiver. Although the two terms are frequently used interchangeably, they are essentially different. A waiver may amount to an estoppel, but this does not necessarily follow. And there is no requirement that the party claiming waiver must be misled into an altered position. The voluntary relinquishment of a known right is sufficient. *Webster* v. *State Mutual Fire Insurance Company,* 81 Vt. 75, 80, 69 Atl. 319; *Dunbar* v. *Farnum,* 109 Vt. 313, 322, 196 Atl. 237, 114 A.L.R. 996; *Mears* v. *Farmers Cooperative Fire Insurance Co.,* 112 Vt. 519, 522, 28 A.2d 699.

It can be inferred from the chancellor's findings that the terms of payment specified in the original note were carried forward into the later obligation of August 18, 1955. In any event, a finding to this effect was required by the evidence. It was retained and transferred by McPherson along with the note for $16,158. It was confirmed by the recital in the chattel mortgage of February 1, 1958. The undisputed testimony of the witnesses Anatole Trudeau and McPherson was to the same effect. In addition, finding 31 states: "That since the negotiation of the note of $16,158.00 to the Defendant Lussier, the Plaintiffs have failed to pay the same in accordance with the terms set forth in the note for $14,752.43, having failed to make the minimum payments of $100 per month as provided by the terms of said $14,752.43 note."

The defendant Lussier's answer admits that one-third of the proceeds of the plaintiffs' dairy products have been regularly paid and that the plaintiffs are "now continuing to pay one-third of the proceeds of their dairy on said note." Finding 32 reports that there have been payments since May 10, 1961.

In support of this finding we can infer that the default had continued for more than sixty days. This entitled the defendant Lussier to an election; to excuse the default and regard the terms for payment as still operative, or exercise the option to demand full payment of the balance due. He could not pursue both courses at the same time.

These established facts compose the essentials for application of the doctrine of waiver by a court of equity. A partial payment made after a default which is accepted by a chattel mortgagee is regarded as a waiver of the strict legal rights of the obligee and a relinquishment of the right to demand a forfeiture. 14 C.J.S. Chattel Mortgages, §330, p. 978; 10 Am. Jur. Chattel Mortgages, §234, p. 869. And it is the general rule that the unconditional acceptance of part of the obligation of a note constitutes a waiver of the acceleration of maturity provisions by the holder of the instrument. In this situation, equity will grant relief against an impending forfeiture. *Fant* v. *Thomas,* 131 Va. 38, 108 S.E. 847, 19 A.L.R. 280, 283, and annotation; 8 Am. Jur. Bills and Notes, §286; 10 C.J.S. Bills and Notes, §251(f).

Judge Collamer pointed out in *Smalley* v. *Hickok*, 12 Vt. 153, 163, it is the general rule that the receiving in whole or in part of the mortgage debt, even after a decree of foreclosure has become absolute, will let in the mortgagor to redeem. And it was held that the acceptance of payment by the mortgagee was a waiver of such forfeitures as then existed. See also *Phelps* v. *Root*, 78 Vt. 493, 498, 63 Atl. 941. When it is established that a mortgage exists, the equitable right of redemption attaches to the transaction as an inseparable incident. *Skeels, Admr.* v. *Blanchard*, 85 Vt. 288, 293, 81 Atl. 913.

In the case at hand, after foreclosure of the chattel mortgage was begun and the actions at law commenced, the defendant creditor has continued to accept payments on the mortgage indebtedness, reducing the balance to at least $8,196.47. The debtors equity in the mortgaged property had concurrently increased accordingly. It would be oppressive and unjust to permit the pending legal proceedings to circumvent the mortgagor's right to redeem by forced sale under the chattel mortgage or on execution.

We conclude that the defendant Lussier's continuing acceptance of one-third of plaintiffs' milk checks constituted a waiver of his right to invoke the accelerated payment clause for past defaults. The decree dismissing the complaint was in error. The temporary injunctions, restraining the impending sale under the chattel mortgage, and halting the proceedings at law, should be continued. A further accounting is required to ascertain the present standing of the parties and their obligations, with a reasonable opportunity afforded the plaintiffs to redeem the mortgaged property as the present circumstances may require.

*Decree reversed and cause remanded.*