## GEORGE WHEELER v. L. C. WHEELOCK.

### False Warranty.

Where the defendant, in reply to an enquiry made by the plaintiff, in making
the purchase of a horse, whether the animal was sound, said that he was so
far as he knew, and the court, upon all the evidence, failed to find that the
defendant *really believed* the horse was unsound, but did find that " he had
reasonable and good ground to suppose that he was, and that he knew if he
communicated what he had discovered, and what had been told him in rela-
tion to the horse, it would be likely to prevent the plaintiff or any purchaser
from buying the horse, or materially lessen the price he could obtain for
him, and lessen his value in the estimation of the plaintiff or any purchaser,"
it was *held* that this amounted to an affirmative misrepresentation, rather
than a wrongful concealment of facts, which were material, and ought, in
good faith, to have been disclosed.

ACTION ON THE CASE for the false warranty of a horse. Plea, the general issue and trial by the court, March Term, 1861. PECK, J., presiding.

The plaintiff bought the horse of the defendant on the 23d day of July, 1859, at the price of one hundred and twenty-five dollars, for which the plaintiff gave his notes, and took the horse into his possession.

It appeared that the defendant, a few days before he sold the horse to the defendant, bought him of one Currier, at the price of seventy-five dollars, and a claim against an insolvent estate worth ten or fifteen dollars ; that Currier had owned the horse for a long time, and had kept him at his residence, near to where the defendant resided, and that defendant had frequently seen the horse driven by Currier; but had not particularly examined him at the time he bought him ; that for some time after Currier sold the horse to the defendant, the animal had appeared strangely; as if afflicted with fits, or crazy ; and frequently, when standing in the stable, would appear dumpish, holding his head down, and standing in a manner indicating that he was sick ; that at other times there was nothing in his appearance indicating, or which would be likely to lead one to suppose that he was otherwise than well and sound ; that the horse was naturally fine looking, and would have been worth at least one hundred and twenty-five dollars, but for the sickness or infirmity above described, which the court found to be of a permanent character before and at the time of the sale to the plaintiff, and that it existed to such a degree as to greatly lessen the value of the horse.

The defendant bargained for the horse with Currier, verbally, at Barre village, but did not take him into his possession, nor pay any part of the price until two or three days after, when he and Currier went to the barn after the horse. The horse stood in the stable, with his head down, indicating that something ailed him—so much so that it attracted the attention of the defendant ; and the defendant asked Currier what ailed the horse, saying he did not think there was any life in him ; to which Currier replied that if he struck him with a whip, he guessed he would find as much life as he wanted. The defendant, thereupon,

Wheeler *v.* Wheelock.

backed the horse out of the stable, when Currier told him that if he took him, he must do so at his own risk—that he must not expect him to take the horse back if he proved to be mad or crazy ; whereupon the defendant asked Currier if he knew any thing about the horse that was not.all right, and Currier made some reply, giving the defendant to understand that he did not. The defendant led the horse home, but before he had put him into the barn, he and the plaintiff began negotiating the trade in question. ⸳ Before the trade was concluded, and while the plaintiff was driving the horse a short distance, the defendant stepped into a blacksmith's shop, and while there, was informed by two workmen by the name of Benedict, that they had shod the horse a few days before, and that he then acted as if he had fits, and they did not think he was a sound horse ; and it also appeared that what the Benedicts thus told him was true. Within a few minutes after, the plaintiff returned, and the trade was closed, the plaintiff asking the defendant, just before the close of the trade, if the horse was sound, and the defendant replying that he was, so far as he knew, upon which statement the plaintiff relied. The defendant did not inform the plaintiff of what transpired between him and Currier when he purchased the horse of him, nor of the appearance of the horse on that occasion, nor of what was told him by the Benedicts.

In about a week after the trade, the horse began to have fits again, and exhibited the same appearance as above described. The plaintiff thereupon tendered the horse back to the defendant, and demanded his notes, but the defendant refused either to take the horse back or to give up the notes.

The court failed to find that the defendant, at the time of the sale to the plaintiff, had any other knowledge of unsoundness or of any other disease in the horse than as above stated ; nor did the court find that the defendant really believed, at the time of the sale, that the horse was unsound or diseased; but they did find that he had reasonable and good ground to suppose that he was, and that he knew that if he communicated what he had discovered, and what had been told him in relation to the horse, it would be likely to prevent the plaintiff, or any purchaser, from buying the horse, or would materially lessen the price he could

obtain for him, and lessen his value in the estimation of the plaintiff or any purchaser ; and the court decided, therefore, that it was the defendant's duty to have communicated his information to the plaintiff, and that he was not justified in telling the plaintiff the horse was sound so far as he knew, without also communicating the information as to his unsoundness, which he had received; and upon that ground the court rendered judgment for the plaintiff, to which the defendant excepted.

G. C. Wheelock and Peck & Colby, for the defendant.

E. E. French and Wing, Lund & Taylor, for the plaintiff.

BARRETT, J. This is an action on the case for the false warranty of a horse, in the common form of declaring in such cases.

The evidence showed that the defendant, in reply to an inquiry made by the plaintiff in making the purchase, whether the horse was sound, said that he was so far as he knew. It was proved that the horse was in fact unsound at that time. The evidence showed that the defendant, before he sold the horse, and on the occasion of purchasing him of Currier, had discovered unsound appearances indicating some trouble, or at any rate, some unusual condition in the horse ; and that, when he made the purchase of Currier, he was told that he must take him at his own risk—that he must not expect him, Currier, to take him back if he was mad or crazy ;—and that, while the plaintiff was driving the horse on trial, pending the negotiation of the trade between the plaintiff and defendant, the defendant was told by the two Benedicts, how the horse acted a few days before on two occasions of being shod, and on account thereof that they did not think the horse was sound ; and specifically that he acted as if he had fits,—and that they told him truly. In a few minutes after this, on the return of the plaintiff in trying the horse, he made the said enquiry and received the said answer from the defendant, as to the soundness of the horse, and thereupon the trade was closed.

The court upon all the evidence, failed to find that the defend-

ant *really believed* that the horse was unsound;—but they found, " that he had reasonable and good ground to suppose that he was, and that he knew that if he communicated what he had discovered, and what had been told him in relation to the horse, it would be likely to prevent the plaintiff or any purchaser from buying the horse, or materially lessen the price he could obtain for him, and lessen his value in the estimation of the plaintiff, or any purchaser." What the defendant had observed, and what was told him constituted the reasonable and good ground for supposing the horse to be unsound What he thus observed and was thus told him, would lessen the value of the horse in the estimation of any purchaser. These facts, then, were material, as bearing upon the subject matter of the trade. And though, in point of fact, they may not have operated to produce full belief in Wheelock's mind that the horse was unsound, still being material facts looking in the direction of the unsoundness of the horse, and constituting *reasonable and good ground for supposing him unsound,* and the defendant knowing, as the court have found, that these facts would lessen his value in the estimation of the plaintiff or any buyer, the conclusion is irresistible that the defendant did know facts which tended to show the horse unsound, and which rendered untrue what he told the plaintiff, that the horse was sound *so far as he knew.*

If the defendant would have placed himself on safe ground, instead of making such a reply to the plaintiff's enquiry, he should have stated those facts, thus constituting a good ground for supposing him unsound, to the plaintiff, and might, if he had seen fit, have accompanied it with any amount of positive asseveration of his disbelief of any unsoundness, or of his affirmative belief that the horse was sound.

The manner of stating the case leaves it somewhat equivocal, whether the court mean to leave it with no finding as to whether the defendant believed the horse to be sound, or to find that the defendant did not believe him to be unsound. But we do not regard it important how the exceptions should be construed in this respect. The question is not whether the defendant made a fraudulent expression of *his belief;* but whether he made a fraudulent expression in saying " the horse was sound *so far* as he

*knew.*"' If he knew any thing contrary to the truth of that statement, then the statement was not true. The court upon warrantable evidence, have found that he did. The court have also found that he knew that those facts would lessen the value of the horse in the estimation of the plaintiff or any purchaser. Here, then, arose' the duty to tell the truth in his reply to the plaintiff's enquiry, and his failure to do so operated the fraud complained of and found by the county court.

We think the county court put the case upon the ground of affirmative misrepresentations, rather than of wrongful conceal-ment of facts which were material and ought in good faith to have been disclosed ; and we think this the warrantable ground on which to place the decision of the case. This renders it needless to discuss the much mooted doctrine and the cases as to the duty of the vendor to make full disclosure of all material facts as to the quality and condition of the article of sale, under the head of' *suppressio veri,* and leaves that subject for the present to stand in this state upon the adjudications hitherto made.

Placing the decision of the case, as we do, on the ground of affirmative fraudulent representation, it falls within principles and rules of application that are too well settled and familiar to require any discussion.

The judgment is affirmed.