## MAYNARD *v.* MAYNARD.

*Sale. Fraudulent Concealment. Damages.*

Plaintiff, in purchasing a bull of defendant, informed him that he wanted the bull to put with his cows, but did not ask him whether or not the bull was suitable for that purpose. The bull, though sound in appearance, was, to the knowledge of defendant, without the power of propagation. Defendant did not disclose his knowledge of that defect, but otherwise used no means to conceal the defect, or in any way to mislead or deceive plaintiff. *Held,* that defendant was guilty of a fraudulent concealment of a material fact peculiarly within his own knowledge, and was therefore liable in an action for deceit.

When the vendor sells a thing for a particular purpose, and defrauds the vendee in respect to its fitness for that purpose, he is liable for all damage directly resulting from the prudent use of the thing for such purpose. Thus, the defendant was liable for the diminution in the value of plaintiff's dairy resulting from the use of the bull, if used in the exercise on plaintiff's part of ordinary care and diligence, both to discover the defect and to prevent consequent damage.

*Held,* that plaintiff might show that his cows, on account of not having been gotten with calf, produced less butter than they had been accustomed to produce.

CASE for deceit in the sale of a bull. Plea, the general issue, and trial by jury, September Term, 1876, ROYCE, J., presiding.

The plaintiff's testimony tended to show, that on November 1, 1871, he purchased a yearling bull of the defendant, and that he then informed the defendant that he wanted the bull to put with his cows during the coming season, but that he did not ask the defendant whether or not the bull was suitable for that purpose; that the bull then appeared to be healthy and sound, and was without any external defect that could have been discovered by any observation, however diligent; but that, in fact, he was then impotent, and unable to beget calves, which the defendant then knew, but did not tell the plaintiff. There was, however, no evidence that the defendant used any means to conceal the defect, or in any way to mislead or deceive the plaintiff, except as above stated. The plaintiff then offered to show that he put the bull with his cows at the proper time in the summer of 1872; that the bull did not get them with calf; and that by means thereof his cows produced a less quantity of butter in the next two years than

38

they had been accustomed to produce. To the admission of that testimony the defendant objected, but, it was admitted ; to which the defendant excepted.

The defendant moved for verdict, for that plaintiff had not shown a cause of action, and for that the damages shown were too minute and uncertain to be recovered ; but the motion was over-ruled, and the case submitted to the jury ; to which the defendant excepted.

The defendant requested the court to charge, among other things, that if by the exercise of ordinary care the plaintiff could have discovered the condition of the bull and the cows in the summer of 1872, in season to have avoided the damage complained of, by taking his cows to another bull, he was not entitled to recover. The court refused so to charge, but charged, upon the question of damages, as follows :

The plaintiff was entitled to recover just such damages as necessarily resulted to him in consequence of the bull's not getting the cows with calf in the spring of 1872. * * * Here is a man who has got twenty cows on his hands in the spring of the year ; he finds them not coming in ; they won't come in until September ; in what way can he get out of it—what should he do ? He cannot lie by and say, " I will do nothing in the matter. I will not exercise even ordinary care and diligence, and such as would be required of a man of ordinary business capacity and prudence." That will not answer, because it is not damage that necessarily results from the consequence of the act. What could he have done with his cows ? Could he have done anything better than he has done ? Did he use ordinary diligence ?

To the refusal to charge as requested, and to the charge as given, the defendant excepted.

*H. R. Start*, for the defendant, cited *Judd* v. *Blake & McIntyre*, 14 Vt. 410 ; *Bowman* v. *Parker*, 40 Vt. 410 ; *Houghton* v. *Carpenter*, 40 Vt. 588 ; *Pinney* v. *Andrus*, 41 Vt. 631 ; *Hitchcock* v. *Hunt*, 28 Conn. 343 ; *Edwards* v. *Collson*, 5 Lansing, 342 ; *Page* v. *Parker*, 43 N. H. 363 ; *Paul* v. *Hadley*, 23 Barb. 521 ; *Addington* v. *Allen*, 11 Wend. 374 ; Sedgw. Dam. 360, n. ; 1 Parsons Cont. 578.

*C. P. Hogan*, for the plaintiff, cited *Clifford* v. *Richardson*, 18 Vt. 620 ; *Beals* v. *Olmstead*, 24 Vt. 114 ; *Howard* v. *Gould*, 28 Vt. 523 ; *Paddock* v. *Strobridge*, 29 Vt. 470 ; *Stickney* v. *Maidstone*, 30 Vt. 738 ; *Packard* v. *Slack*, 32 Vt. 9 ; *Copper Co.* v. *Copper Mining Co.* 33 Vt. 92 ; *Wheeler* v. *Wheelock*, 34 Vt. 553 ; *Ladd* v. *Lord & Gillett*, 36 Vt. 194 ; *Pease* v. *Sabin*, 38 Vt. 432 ; *Graham* v. *Stiles*, 38 Vt. 578 ; *Cabot* v. *Christie*, 42 Vt. 121 ; *French* v. *Vining*, 102 Mass. 132 ; *Metallic Compression Casting Co.* v. *Fitchburg Railroad Co.* 109 Mass. 277 ; *Fairbanks* v. *Kerr*, 10 Am. Rep. 667 ; *Wolcott* v. *Mount*, 13 Am. Rep. 438 ; 2 Addison Torts, 1005 ; Sedgw. Dam. 85*et seq.*

The opinion of the court was delivered by

Ross, J. The County Court properly overruled the defendant's motion to have a verdict ordered in his favor. The plaintiff gave evidence tending to show, and, under the charge of the court, the jury must have found, that the plaintiff communicated to the defendant that he desired to purchase the bull to serve his cows the coming season ; that so far as could be determined from external appearances, the bull was healthy and sound, and possessed of all the capacities of an ordinary animal of that character ; that he was then known by the defendant to be impotent, and incapable of getting calves ; that the defendant, knowing that the plaintiff desired to purchase him for the particular purpose named, and knowing that he was wholly unfit for that particular purpose, sold him to and suffered the plaintiff to use him, without saying or doing anything to conceal his impotency, but without disclosing the fact of his impotency, knowing the particular purpose for which the plaintiff desired to use him, though making no affirmative representations in regard to his fitness for that purpose, and doing nothing to mislead the plaintiff in that particular, by *selling him*, having knowledge of his impotency, and knowing that his impotency could not be discovered by any external or ordinary examination, the defendant was guilty of a fraudulent concealment of a material fact peculiarly within his own knowledge, and which he was called upon to disclose, and rendered himself liable to an action of fraud or deceit. He was guilty of a suppression

of the truth, which was equivalent to a suggestion of a falsehood. He knew that the plaintiff made the purchase and would in all probability use the animal under a fatal delusion in regard to the one characteristic of the animal which induced the purchase. It is true, as claimed by defendant's counsel, that in *Paddock* v. *Strobridge*, 29 Vt. 470, and in *Wheeler* v. *Wheelock*, 34 Vt. 553, the defendants each made representations which were calculated to draw the attention of the purchasers from the unsoundness which was not disclosed, and not discoverable by ordinary observation and investigation, and so were held guilty of active fraudulent concealment. Yet, in the former leading case in this state, the court cite with approval *Bruce* v. *Ruler*, 2 M. & R. 3, and *Hill* v. *Gray*, 1 Stark. 434, which in their facts have a strong legal analogy to the case at bar. In *Bruce* v. *Ruler*, the defendant induced the plaintiff to accept in his stead a tenant known to him to be insolvent. The defendant made no positive representation in regard to the solvency of the person he offered. The court held that the fact of his offering him to take his own place was equivalent to a representation that he was solvent, and by making the offer with the knowledge of his insolvency, the defendant was guilty of a fraud. In *Hill* v. *Gray*, the defendant merely allowed the plaintiff to purchase a picture under the delusion that it had belonged to a certain collection, when he knew that such belief or delusion enhanced its value in the estimation of the plaintiff, and that the belief was without foundation in fact. The court held that the defendant, affected with such knowledge, by selling the picture without removing the delusion from the mind of the plaintiff, was guilty of actionable fraud. This court substantially adopted the doctrine of these cases in *Graham* v. *Stiles et al.* 38 Vt. 578. The defendants were held liable, as expressed by the court, " mainly upon the ground of fraudulent concealment," rather than " affirmative misrepresensations." In all these cases the defendant's act of selling, under the circumstances, and affected with the knowledge he had of the inducement and purpose which was influencing the plaintiff in making the purchase, was equivalent to an affirmative representation that the property was suited for that purpose, and rendered him an

active participant in giving effect to the delusion or belief which caused the injury, and hence was guilty of deceit. The courts of other states have sanctioned the same doctrine. *French* v. *Vining*, 102 Mass. 132 ; *Wolcott* v. *Mount*, 13 Am. Rep. 438.

The testimony, as will be disclosed in the consideration of the next point, tended to establish that the defendant's fraud occasioned damage to the plaintiff, and hence tended to establish the two points—a tort, and damage resulting therefrom—necessary to entitle him to a recovery. It would therefore have been error for the County Court to have directed a verdict for the defendant.

II. In cases of this kind, the rule of damages is not as claimed by the defendant, the difference between the market value of the animal as he was in fact, and as he ought to have been to have answered the conditions of the sale, although such difference may be an element of damage, and sometimes the only element. When the vendor makes a sale for a particular purpose, and is guilty of defrauding the vendee in respect to the fitness of the thing for that purpose, he is liable to the vendee for all the damages which result directly from using the commodity for the contemplated purpose. A livery-stable keeper who defrauds a customer in letting him a horse for a special use, is liable to the customer,—not alone for the difference between the value of the use of the horse received and of such a horse as he ought to have received, but for all damages resulting directly from putting the horse to the special use contemplated. Many other instances might be mentioned. Where the fraud is in regard to the fitness of the commodity for a special purpose, it is the direct cause of all the damages which result in prudently using it for that purpose.

The cases, *French* v. *Vining* and *Wolcott* v. *Mount*, are illustrations of the application of this rule. In the former, the plaintiff was permitted to recover the value of a cow that died from being fed from hay that was unfit for that purpose, purchased of the defendant. In the latter, the defendant was held liable for the lessened value of a crop of turnips, occasioned by his having sold the plaintiff turnip seed of a kind different from that called for by the plaintiff, he having been informed at the time of the purchase

that the plaintiff desired the kind called for to raise a crop for a particular market.

In the case at bar, the County Court charged the jury that " the plaintiff was entitled to recover just such damages as necessarily resulted to him in consequence of the bull's not getting the cows with calf in the spring of 1872; " and also, that the plaintiff must use ordinary care and diligence, to prevent further damage, when he had ascertained the impotency of the bull. This is a correct statement of the rule of damages, so far as it goes. No error can be predicated of the charge given. The defendant requested the court to charge, — in the first proposition of his first request, — " If the jury find that the plaintiff, in the summer of 1872, by exercising ordinary care, could have discovered the condition of the bull and his cows in season to have avoided the damage complained of, by taking his cows to another bull, then the plaintiff is not entitled to recover." We think this is a sound proposition of law, and under the testimony in the case ought to have been complied with. The court did not call the attention of the jury to the fact that the plaintiff was bound to exercise ordinary care and diligence to discover the impotency of the bull and the condition of his cows. The only portion of the charge looking towards this aspect of the case, is as follows: " Here is a man who has got twenty cows on his hands in the spring of the year; he finds them not coming in; they won't come in until September. In what way can he get out of it? What should he do?" This portion of the charge assumes that the plaintiff did not find out the condition of his cows till very late in the fall of 1872, and does not at all direct the attention of the jury to whether the plaintiff had used ordinary care and diligence in that respect, and thus prevent as much of the damage as he reasonably could. In the failure of the court to comply with this request we think there was error, especially as the only evidence of damage given by the plaintiff was that, by reason of his cows coming in late, he made a less quantity of butter from them in the seasons of 1873 and 1874 than he had been accustomed to make. The diminution in the quantity of butter from what it otherwise would have been but for the fraud of the defendant, might aid the jury

Maynard v. Maynard.

in ascertaining the damages. Without more being shown, it did not furnish the true criterion for estimating the damages, especially when the diminution in quantity was obtained by comparing the product of those years with what " he had been accustomed to make from said cows." The seasons of 1873 and 1874 might have been less or more favorable for producing butter than ordinary seasons. The true criterion for ascertaining the damages necessarily resulting to the plaintiff's dairy from the fraud or deceit, was the amount the dairy was diminished in value, by using the bull in the exercise of ordinary care and diligence, both to discover the cause and prevent damage. The diminution in the quantity of butter made in the seasons of 1873 and 1874, from what it had been accustomed to be, might or might not amount to the same sum as the diminished value of the dairy, as ascertained by applying the principles just stated. This testimony in regard to the product of the dairy for 1873 and 1874, was received against the exception of the defendant. As it had a tendency to show the damages sustained by the plaintiff, and might, with proper instructions and cautions from the court, aid the jury in ascertaining the damages, the testimony was admissible. But being of such a character, and extending the damages over so great a period of time, it was all the more necessary for the court to have complied with the first proposition of the defendant's first request.

Judgment reversed, and cause remanded.