## D. A. BOYNTON *v.* W. L. HUNT.

May Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON AND TAYLOR, JJ.

Opinion filed October 14, 1914.

*Admission and Exclusion of Evidence—Harmless Error—Eject-*
*ment—Defences—Equitable Estoppel—License—Revocation*
*Acquiescence—"Estoppel by Silence."*

Where a verdict was for defendant on the question of liability, any
error in the exclusion of evidence as to damages was harmless.

In ejectment for so much of plaintiff's property as was occupied by
a cornice on defendant's building, it is so obvious that it would be
"quite expensive" for defendant to remove the cornice that evi-
dence to that effect was harmless to plaintiff.

Equitable estoppel is a good defence in an action of ejectment.

In order to create an equitable estoppel defendant must have been
misled by plaintiff's conduct.

An equitable estoppel is now as available at law as in equity.

A license as to real property may be implied from the conduct of the
owner.

A gratuitous and wholly executory implied license as to real property
may be revoked.

By the strict rules of the common law an oral, or an implied, license
as to real property may be revoked, regardless of whether it has
been acted upon by the licensee; but in equity a licensor is estop-
ped from revoking such a license that has been so acted upon,
where the revocation would be a fraud on the licensee.

In order to create an "estoppel by silence" there must be a duty to
speak, and the silence must itself mislead, so that, if one builds
on land of another supposing it to be his own, and the owner,
with knowledge of the error, stands by in silence, he will not be
allowed thereafter to assert his title; but, where the builder
knows that the land belongs to another, or is culpably ignorant
of its ownership, equity does not deny the owner the right to
assert his title.

EJECTMENT.. Plea, the general issue with notice. Trial by jury at the September Term, 1913, Windham County, *Miles*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*O. B. Hughes* for the plaintiff.

*Barber & Barber* for the defendant.

POWERS, C. J.   The parties to this controversy own adjoining lots in the village of South Londonderry. In the summer of 1907, the defendant erected a building on his lot. He set his foundation wall about a foot from the line between the two properties,—the location of which line was well known to both owners. When finished, the cornice of the defendant's building overhung the plaintiff's lot something like a foot at the rear, and about six inches at the front. The action is ejectment to recover possession of so much of plaintiff's property as is occupied by this cornice. When the plaintiff was on the stand as a witness, he was asked by his counsel if he intended to use the land over which the building projected. An objection being made, he offered to show that he planned to erect a building on his land, and claimed that this was admissible on the question of damages. The testimony was excluded, and the plaintiff excepted.

We have no occasion to examine the question thus presented, for the jury found for the defendant on the main question of liability, and so the matter of damages was not in the case; and the ruling, right or wrong, was quite harmless.

Subject to exception, the defendant was allowed to testify that it would be quite expensive to remove his cornice and that its removal would disfigure his building. The plaintiff argues that this evidence was wholly immaterial; because it was the plaintiff's right that was being tried, and if that was established, the damage or inconvenience to the defendant was of no consequence. On the other hand, it is urged in support of the ruling, that the evidence was material, because it was necessary to show that the defendant would be damnified unless the estoppel, which was relied upon as a defence, was allowed.

The facts testified to were perfectly obvious. It was just as apparent to the jury before the testimony was given, as after,

that it would cost something to remove the cornice, and that its removal would injure the appearance of the building. The testimony could not have harmed and the exception is unavailing. *Niles* v. *C. V. Ry. Co.,* 87 Vt. at p. 361, 89 Atl. 629.

As we have suggested, the defendant asserted an equitable estoppel, and this was his main defence at the trial. The plaintiff says that this defence is not available in actions of ejectment. While expressions to this effect are to be found in the books, the authorities are to the contrary. *Shea* v. *Shea,* 154 Mo. 599, 55 S. W. 869, 77 Am. St. Rep. 779, and n.; *Kirk* v. *Hamilton,* 102 U. S. 68, 26 L. ed. 79.

The defendant gave evidence to show, and the verdict in his behalf has established, that the plaintiff, all the time the building and cornice were in process of construction, knew the location of the line dividing the lots, and that the cornice was being built in such a way as to overhang his property,—yet made no protest or objection. And this, the defendant asserts estops the plaintiff from now objecting, and bars the suit.

The court charged the jury, in effect, that if the plaintiff was present when this building was being constructed, and knew where the line was, and that the cornice was being built out over his land, and made no objection, the defendant would have a right to understand that he consented to its construction, and he could not maintain his suit. To this the plaintiff excepted.

The instruction was fatally defective. It omitted one essential element of an estoppel; it failed to call attention to the fact that, in order to make out an estoppel, it was necessary to show that the defendant had been misled by the plaintiff's conduct. Without this, there was no estoppel. *Clement* v. *Gould,* 61 Vt. 573, 18 Atl. 453; *Pond* v. *Pond,* 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212; *Royce* v. *Carpenter,* 80 Vt. 37, 66 Atl. 888; and many other cases.

If we were to treat the real question involved as a question of implied license, as we might if it would save the judgment, the result would be the same.

That a license may be implied from the conduct of an owner is too well settled to be questioned. That such a license may be revoked when it stands upon no consideration and remains wholly executory is equally well established. Whether or not it can be revoked after it has been acted upon, is a question which

has provoked much discussion and resulted in conflicting de-cisions. The view held by this Court is that by the strict rules of the common law, a license is revocable without reference to the situation in which the licensee stands, though in equity the licensor is estopped from revoking a license granted and acted upon, when the revocation would operate as a fraud upon the licensee. And it should be noted that these strict rules of the common law have been so modified that now an estoppel is as available at law as in equity. *International Paper Co. v. Bellows Falls Canal Co.,* 88 Vt. 93, 90 Atl. 943; *Wheaton* v. *Cutler,* 84 Vt. 476, 79 Atl. 1091, and cases cited. Whether this rule ought to be adhered to and applied to a case like the one in hand, we need not decide. For here the defendant has not proceeded under any such license. The instruction excepted to entirely omits this feature. A license is not acted upon unless something is done under it. The revocation would not amount to a fraud unless the licensee relied upon the license. The instruction is in ac-cord with both the evidence and the notice; neither claimed that the defendant in any way relied upon the plaintiff's conduct. Indeed, if we are to take the defendant at his word, he did not; for he testified that he did not know that his cornice extended beyond the line until after it was completed. We are not called upon to say what the defendant's position would have been if he had not known the location of the line. He did know it; and knowing it he had no right to depend upon the plaintiff's silence, but built at his peril. The plaintiff was under no obliga-tion to warn him. In order to create an estoppel by silence, there must be, not only an opportunity to speak, but a duty to speak; and the silence must itself mislead. Hence it is that if one builds on the land of another supposing it to be his own, and the owner stands by in silence, the latter will not be allowed to afterwards assert his title. But two things are necessary to this result: The builder must suppose that he is building on his own land; and the owner must know of this error. If the builder knows that the land belongs to another, equity does not deny the owner the right to assert his title. *Ramsden* v. *Dyson,* L. R. 1, H. L. 129. And the same result follows if the builder is ignorant of that fact, if such ignorance is the result of his cul-pable negligence. 16 Cyc. 738. A case in point is *New York Rub-ber Co. v. Rothery,* 107 N. Y. 310, 14 N. E. 269, 1 Am. St. Rep. 822. A riparian owner there stood by in silence while the owner

on the other side of the stream erected a factory and dug a race-away that the former knew would divert the water; but it was held that she was not estopped, since the other party knew all the facts and she was under no duty to speak. To the same effect are *Lux* v. *Haggin,* 69 Cal. 255, 4 Pac. 919, 10 Pac. 674, and *Morrill* v. *St. Anthony Falls Waterpower Co.,* 26 Minn. 222, 2 N. W. 842, 37 Am. Rep. 399.

*Judgment reversed and cause remanded.*