H. S. STEVENS *v.* E. E. BLOOD.

October Term, 1915.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 4, 1916.

*Exceptions to Sufficiency of Evidence—Waiver—Fraud—Elements—Scienter—Passing Off Belief for Knowledge— Haphazard Falsehood—Evidence—Sales—Recovery of Price Paid—Equitable Estoppel—Elements—Reliance and Injury.*

Exceptions by defendant to the overruling of his motion for judgment and for nonsuit because of the insufficiency of the evidence, made at the close of plaintiff's case, are waived by proceeding with the defence.

Either haphazard falsehood, intentionally passing off mere belief for actual knowledge, or the fraudulent suppression of the truth, is a knowingly false representation which supplies the *scienter* necessary to maintain an action for fraud.

In assumpsit to recover a portion of the price paid for horses after rescission of the contract because of fraud, evidence *held* to justify the finding of defendant's knowledge of the falsity of his representations.

Direct evidence of the *scienter* is not necessary, but fraud may be inferred from circumstances.

Where the purchaser of horses, within a reasonable time after discovering that they were not as represented, returned them, rescinded the contract on account of the seller's fraud, and demanded the money paid and his note given for the balance of the price, and subsequently a bank holding the note procured judgment thereon and sold the horses, then in the possession of the seller, in partial satisfaction thereof, the purchaser at all times after the rescission disclaiming any interest in the horses, and the seller not acting on any act or omission of the purchaser, the application of the proceeds of the sale of the horses to the payment of the judgment, and the payment by the purchaser of the balance of the judgment, does not estop him from recovering from the seller the

6

price that the purchaser was induced to pay by the fraud of the
seller in the original sale of the horses.

There can be no equitable estoppel unless the person claiming it relied
on the conduct of the person estopped, and was thereby induced to
an action whereby he will be prejudiced if the other is permitted to
assert his legal rights.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by
court at the September Term, 1914, Windham County, *Waterman*, J., presiding. Judgment for the plaintiff. The defendant
excepted. The opinion states the case.

*Barber & Barber* for the defendant.

*Ryder & Graham* for the plaintiff.

TAYLOR, J. The action is general assumpsit to recover a
portion of the purchase price of a pair of horses sold by defendant to plaintiff. The price agreed upon was $525. At the
time the horses were delivered plaintiff paid $200 by check and
gave defendant his note for $325 payable in three months at the
People's National Bank in Brattleboro. The ground of recovery
was fraud in the sale and subsequent rescission. The trial was
by court with judgment for plaintiff.

At the close of plaintiff's evidence defendant moved for
judgment in his favor and also for non-suit upon the ground that
plaintiff had failed to make out a case in that there was no evidence tending to show *scienter*, nor that the alleged representations were fraudulently made. The motions were severally overruled and exceptions noted. Again, at the close of all the evidence defendant renewed said motions and further moved for
judgment in his favor upon the ground that plaintiff, having
availed himself of the proceeds of the sale of the horses in question in part satisfaction of a judgment against him in favor of
the People's National Bank, thereby affirmed the contract and is
estopped from maintaining the suit. These motions were
severally overruled and exceptions noted. Defendant attempted
to raise the same questions by exceptions to the court's findings.
Stripped of verbiage the questions thus presented for review
are:

1.   Was there evidence tending to show *scienter?*

2.   Is the plaintiff estopped from maintaining this suit by permitting the judgment against him in the Bank's suit to be reduced by the proceeds of the sale of the horses?

Defendant argues the exceptions taken at the close of plaintiff's evidence; but by proceeding with his defence he waived them.   However, we consider his argument as applied to the exceptions taken at the close of all the evidence, which present the same questions, though now affected by the evidence subsequently introduced.

Was there evidence tending to show *scienter? Scienter* implies knowledge; but to void a contract for fraud it is not necessary to prove that the party charged with fraud had actual knowledge of the falsity of his representations.   Haphazard falsehood, intentionally passing off belief for knowledge and fraudulent suppression of the truth are of the same quality as conscious misstatement of facts and furnish the element of knowledge required to make the false representation fraudulent. *Slack* v. *Bragg,* 83 Vt. 404, 76 Atl. 148; *Hunt* v. *Lewis,* 87 Vt. 528, 90 Atl. 578.   Thus, representations recklessly made as of one's own knowledge, without in fact knowing whether they are true, may be fraudulent.   *Adams* v. *Ladeau,* 84 Vt. 460, 79 Atl. 996; *Darling* v. *Stuart,* 63 Vt. 570, 22 Atl. 634; *Cabot* v. *Christie,* 42 Vt. 121, 1 Am. Rep. 313; *Wheeler* v. *Wheelock,* 34 Vt. 553. If a person makes statements as of his own knowledge, when he knows that he has no such knowledge, but is stating only what he believes to be true, and the statements prove false, the transaction would be fraudulent.   *Corey* v. *Boynton,* 82 Vt. 257, 72 Atl. 987; *Johnson* v. *Cate,* 75 Vt. 100, 53 Atl. 329.   In such case he knowingly passes off his belief as knowledge of the fact stated, which supplies the necessary element of *scienter.*

Turning to the transcript, which is made controlling on this question, we find that there was evidence tending to show the following facts:   Plaintiff was a grocer at Keene, N. H., and defendant conducted a livery business and dealt in horses at Putney, Vt.   Plaintiff had a conversation with defendant by telephone concerning the horses in question, in which he inquired whether they were afraid of automobiles or anything else.   Defendant replied that they were afraid of nothing.   Plaintiff said that he wanted the horses to use on his delivery wagons and defendant informed him that they were suited to that business.   A

meeting on the road between Putney and Keene was arranged. They met according to agreement and plaintiff examined the horses. He asked if they were afraid of automobiles, motor cycles or electric cars. Defendant said they took no notice of automobiles,—"they go right by them." Plaintiff asked if they would kick, to which defendant replied: "No, sir, you cannot make them kick." Plaintiff explained that he wanted the horses for use on his grocery teams and asked if they would work single. Defendant said that they would work either way, single or double,—that he had let them both ways. Plaintiff asked if they would stand with a weight, to which defendant replied that they would, and added: "Mr. Stevens, you need not be afraid to buy these horses; you take no chances. I warrant these horses just as I tell you." Thereupon, plaintiff purchased the horses and gave the check and note mentioned above.

Plaintiff and an employee took the horses to Keene, leading them behind a buggy. On the way they met an automobile; and, though the driver stopped, the horses were so frightened in passing it that they shied out to the limits of the highway. The next day plaintiff hitched one of the horses to a buggy and found it so frightened at automobiles that he returned it to his stable. This horse was tried on a delivery wagon and continued to show fear of automobiles and was also afraid of motor cycles and electric cars. It would not stand with a hitch weight, but dragged it along the street. The horse did not improve and it was found impracticable to use it on the delivery wagon. The other horse having shown signs of being afraid of automobiles was placed in the hands of a horse trainer who drove it on the streets of Keene in a breaking sulky. It showed a good deal of fear of automobiles,—was what the trainer called "a green acting horse." When it was attempted to drive it past an automobile it would "buck" and try to kick. It would also kick in the stable at persons passing behind it on the floor.

Defendant had owned the horses about a year and a half before selling them to plaintiff and they had been used in different kinds of work during that time. Defendant's evidence tended to show that they were safe and good to work and had never done anything wrong while he owned them. There was no testimony of instances of such misconduct while defendant owned them as they showed after they were sold to plaintiff. There was also no evidence that the horses had ever been used

in the kind of work that defendant understood they were to be put to in plaintiff's business.

It seems incredible that the habits and disposition of these horses should have changed immediately upon their coming into plaintiff's possession. The circumstances all point to one of two things: Either the defendant knew that they had the vices covered by his representations, or he knew when making the representations that he was wanting in knowledge as to those matters. Direct evidence was not necessary to support plaintiff's claim that defendant's false representations were fraudulent. Fraud could be inferred from the circumstances. *Oben* v. *Adams,* 89 Vt. 158, 94 Atl. 506; *Adams* v. *Ladeau,* 84 Vt. 460, 79 Atl. 996; *Compton* v. *Beedle et al.,* 83 Vt. 287, 75 Atl. 331, 30 L. R. A. (N. S.) 748, Ann. Cas. 1912 A, 399. The evidence clearly made a case from which the court could infer *scienter* or its equivalent. They were to judge the weight of the evidence and could reject such testimony as they regarded too improbable to be worthy of belief.

The remaining question is somewhat novel. Against objection defendant was permitted to show, on the ground of estoppel, that the People's National Bank brought suit against this plaintiff on the note which he gave the defendant, in which suit the horses, then being in defendant's possession, were attached as the property of the plaintiff; that such proceedings were had therein that the Bank had judgment against the plaintiff at the April Term, 1912, of Windham County Court for the amount of the note; that the horses were sold by the officer who made the attachment, pursuant to chapter 87 of the Public Statutes, while the suit was pending and the proceeds of the sale, $204.10, paid into court; that after judgment against this plaintiff the court ordered the clerk to pay the proceeds of the sale to the Bank to apply on its judgment, which was done; that thereafter plaintiff paid to the Bank the balance of its judgment. There was evidence tending to show that one Farr bid off the horses at the sheriff's sale and that defendant immediately purchased them of him. Plaintiff produced evidence in rebuttal tending to show that he did not consent to the sale of the horses, claimed no interest in the fund, declined to give an order on the clerk for the release of the money, and that, on the application to the court for the order to pay over the money to the Bank, plaintiff's

counsel stated to the court that he had no interest in the application.

On discovering that the horses were not as represented, and within a time that the court finds was reasonable, plaintiff returned the horses, rescinded the contract and demanded his money and note. The court has made the necessary findings to support the rescission, which was perfected upon the return of the horses. Is the plaintiff estopped by his subsequent conduct from asserting it? If so, it is because he must be said to have waived the rescission, or to have ratified the sale of the horses as his property, by consenting to have the judgment against him on the note discharged on payment of a sum less than the full amount. There is nothing in the evidence to show an intentional relinquishment of any right he had because of the rescission. To the very last he was protesting that he was not interested in what was done with the horses or their proceeds. The Bank had attached property which he disclaimed to own and in fact did not at the time own. He suffered judgment on the note in the hands of the Bank because as to it he had no available defence. He did not consent to the sheriff's sale and took no part in the application of the proceeds thereof to the judgment. In effect, he said: "Do as you like with it." He did nothing to the prejudice of the defendant's rights when he paid only what was demanded of him in satisfaction of judgment, as he was entitled to recover all that he was forced to pay on the note. Defendant admits in his brief that he was not led into any action on the strength of anything that plaintiff did or omitted to do, though he says he is entitled to rely on plaintiff's decision accepting the avails of the sale in payment of the judgment against him as a defence to this action. But there was no estoppel, unless the defendant relied upon the conduct of the plaintiff, was induced by it to act, and thus relying and induced, did something whereby he will be prejudiced, if the plaintiff is permitted to assert his legal right. *Royce* v. *Carpenter et al.*, 80 Vt. 37, 66 Atl. 888; *Boynton* v. *Hunt*, 88 Vt. 187, 92 Atl. 153; *State* v. *Heaphy*, 88 Vt. 428, 92 Atl. 813; *Vermont Accident Ins. Co.* v. *Fletcher et al.*, 87 Vt. 394, 89 Atl. 480; *Cal. Co. Gr. School* v. *Howard et al.*, 84 Vt. 1, 77 Atl. 877; *Pond* v. *Pond's Est.*, 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212. All the essential elements of an estoppel are wanting in this case.

Defendant argues that, by allowing the horses to be sold as his property and by using the avails of the sale to pay the judgment against him, plaintiff reaffirmed the contract and so is estopped, as one cannot both affirm and deny the same contract. But the evidence fails to show that plaintiff had anything to do with the sale of the horses; and, if he could in any event reaffirm the contract after a perfected rescission, which we do not decide, it is a far cry to say that plaintiff reaffirmed it by anything that he did in connection with paying the Bank's judgment.

*Judgment affirmed.*