AMBROISE CASTONGUAY *v.* GRAND TRUNK RAILWAY COMPANY.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 1, 1917.

</div>

*Bill of Exceptions—Jurisdiction of Trial Court Over—Amendment—Motion for Non-suit—When Treated as Motion for Verdict—Motion for Verdict—Sufficiency—Federal Employers' Liability Act—Federal Question—Employment in Interstate Commerce—When no Jury Question is Presented—Questions not Raised Below.*

The presiding judge of the trial court retains jurisdiction over the bill of exceptions for the purposes of amendment at least until the cause is heard before the Supreme Court.

A motion for a nonsuit made by the defendant at the close of all the evidence, which was treated in the court below as a motion for a directed verdict, will be so treated in Supreme Court.

A motion for a verdict must point out the precise ground upon which it is predicated; otherwise it is not error to overrule it.

A question presented under the Federal Employers' Liability Act is a federal question and the decisions of the Supreme Court of the United States must be accepted as authority.

An employee of a railroad company who is injured while repairing a round house in which locomotives used to haul interstate trains are housed, inspected and repaired is not engaged in interstate commerce within the meaning of the Federal Employers' Liability Act.

Where no facts are in dispute, there is nothing for the jury and the question is for the court.

Questions not raised in the court below will not be considered in the Supreme Court.

*French* v. *Grand Trunk Ry. Co.,* 76 Vt. 441, *overruled pro tanto.*

ACTION brought under the Federal Employers' Liability Act to recover damages for personal injuries suffered by plaintiff while in the employ of defendant. Plea, the general issue. Trial by jury at the April Term, 1916, Essex County, *Waterman,* J., presiding. Verdict for plaintiff. Defendant excepted.

At the close of all the evidence, defendant moved for a directed verdict, on the ground that the plaintiff had failed to show that he was engaged in interstate commerce, or transportation at the time he suffered the injury complained of. The motion was overruled, and defendant excepted.

*Drew, Shurtleff, Morris & Oakes* for the defendant.

The service upon which plaintiff was employed at the time of his injury was not a part of interstate commerce, and defendant is not liable under the Federal Employer's Liability Act. *Ill. Cent. R. R. Co.* v. *Behrens,* 233 U. S. 473; *Erie R. Co.* v. *Van Buskirk,* 228 Fed. 489; *Shanks* v. *D. L. & W. R. Co.,* 239 U. S. 556; *C. B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 60 L. ed. 941.

*C. R. Powell and Simonds, Searles & Graves* for the plaintiff.

The roundhouse was necessary for the use of engines engaged in interstate transportation. The requisite employment in interstate commerce exists where the employee is repairing an instrumentality of interstate commerce.

*Pedersen* v. *D. L. & W. R. Co.*, 299 U. S. 146, 57 L. ed. 1125; *Shanks* v. *D. L. & W. R. Co.*, 239 U. S. 559, 36 Sup. Ct. 188; *Walsh* v. *N. Y. N. H. & H. R.*, 223 U. S. 1; *St. L. S. F. & Texas Ry. Co.* v. *Seale*, 229 U. S. 156, 57 L. ed. 1129; *N. Y. C. & H. R. R. Co.* v. *Carr*, 238 U. S. 260, 59 L. ed. 1298; *N. C. R. Co.* v. *Zachary*, 232 U. S. 248, 58 L. ed. 591; *Zikos* v. *O. R. & N. Co.*, 179 Fed. 893; *Colasurdo* v. *C. R. R. of N. J.*, 180 Fed. 832; *N. P. Ry. Co.* v. *Maerkl*, 198 Fed. 1; *B. & O. R. Co.* v. *Darr*, 204 Fed. 751, 124 C. C. A. 565; *Law* v. *Ill. Cent. R. Co.*, 208 Fed. 869, 126 C. C. A. 27; *Cousins* v. *Ill. Cent. R. Co.*, 126 Minn. 172; *Powell* v. *Freeman*, 148 S. W. 1033, 148 S. W. 290; *Horton* v. *O. W. R. & N. Co.*, 72 Wash. 503, 130 Pac. 897; *Perry* v. *Ill. Cent. R. Co.*, 123 Minn. 264, 143 N. W. 724; *Thomas* v. *B. & M. R. R.* 219 Fed. 180; *Coal & Coke Ry. Co.* v. *Deal*, 231 Fed. 604; *Eng.* v. *So. Pac. Co.*, 210 Fed. 92; *Grylowski* v. *Erie R. Co.*, 95 Atl. 764; *Thompson* v. *C. N. O. & T. P. Ry.*, 165 Ky. 256, 176 S. W. 1006; *Nash* v. *M. & St. L. R. Co.*, 154 N. W. 957; *Chesapeake & Ohio Ry. Co.* v. *Kornhoff*, 180 S. W. 523; *Newkirk* v. *Pryor*, 183 S. W. 862.

POWERS, J. The action is brought under the Federal Employer's Liability Act, and is to recover for personal injuries sustained by the plaintiff while in the defendant's employ at Island Pond, Vt. The defendant is a common carrier operating a railroad from Montreal, P. Q., through Vermont and New Hampshire to Portland, Me. Island Pond is a terminal point, and all engines are changed there; and the defendant has there a roundhouse in which its engines used to haul interstate trains are housed, inspected and repaired. Shortly before the plaintiff received his injuries, an engine accidentally backed through the wall of this roundhouse; and John Leblanc, a regular employee of the defendant and acting in its behalf, engaged the plaintiff to assist him in repairing this wall. In the course of the work, it became necessary to remove a large window and frame; and while the plaintiff and others were under the direction of Leblanc, engaged in its removal, it fell upon him and

caused the injuries complained of. The trial below resulted in a verdict for the plaintiff, and the defendant alleges error.

The plaintiff moves to dismiss the exceptions, and the first question for our consideration arises under this motion. The defendant seasonably filed a bill of exceptions signed by the presiding judge, which closes with this statement in his handwriting: "This is allowed as a skeleton bill of exceptions, subject to amendment in forty (40) days from date." Within the time thus limited, the presiding judge signed and filed another bill, the closing paragraph of which reads as follows: "The exhibits used in the trial are referred to and make a part of these exceptions. One copy of the transcript should be furnished the Supreme Court, but need not be printed. The transcript is referred to and made a part hereof, and is to control." The usual clause, "Exceptions allowed, execution stayed, and cause passed to the Supreme Court," is wholly omitted. The plaintiff insists that such a bill is insufficient in two respects: Because it does not contain an order allowing the exceptions; and because it does not contain an order passing the cause to this Court. But it is unnecessary to pass upon these questions for later on the presiding judge, on application by the defendant, made an order extending the time for amending the bill to October 3, 1916. And a hearing having been had thereon, on October 2, 1916, he made and filed an order that the bill be amended by adding thereto the following: "The foregoing is allowed as an amended bill of exceptions, in substitution for the skeleton bill previously filed, execution stayed, and cause passed to the Supreme Court."

If this order was within the authority of the presiding judge the amendment became a part of the bill and the motion to dismiss must be overruled. And the order was within his authority as it was made before the case was argued in this court, and under our practice, the presiding judge retains jurisdiction over the bill of exceptions for the purposes of amendment until the cause is heard before us, at least. Until then, he may at any time amend the bill, and the amendment becomes a part of the record before us. *Bailey* v. *Saunders*, 90 Vt. 39, 96 Atl. 416. Indeed, it sometimes happens that the argument before us is suspended that such an amendment may be made.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, on the grounds that: (1) Upon all the evidence

there was no question of fact for the consideration of the jury; and (2) the plaintiff had failed to show that he was engaged in interstate commerce at the time of the injuries of which he complains. This motion was overruled and the defendant put in its defence. At the close of all the evidence, the defendant renewed its motion, then denominating it a motion for a verdict.

According to the early holdings of this court, a party who appears and complies with the rules and orders of court will not be nonsuited against his will. *Brown* v. *Munger,* 16 Vt. 12. Whether a different practice has since grown up, see *Carr & Blanchard* v. *Manahan,* 44 Vt. 246; *Porter* v. *Platt,* 57 Vt. 533; *Stevens* v. *Blood,* 90 Vt. 81, 96 Atl. 697, we need not now inquire. The difference between a motion for a nonsuit and a motion for a verdict,—except as to their effect upon the right to bring a new suit, is rather a matter of form than of substance. *Oscanyan* v. *Winchester R. Arms Co.,* 103 U. S. 261, 26 L. ed. 539; *Cent. Trans. Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 35 L. ed. 55, 11 Sup. Ct. 478.

And the transcript shows that when the motion was first made it was fully discussed, and no one suggested that it was insufficient to raise the question of the right of the plaintiff to go to the jury. Both court and counsel treated it as a motion for a directed verdict. It was so styled at the close of all the evidence, —the only time here important. In these circumstances we treat it as it was treated below,—as a motion for a verdict. See *Squires* v. *Squires,* 53 Vt. 208, 38 Am. Rep. 668.

The ground of the motion first above stated was expressed in terms too general to require consideration. A motion for a verdict must point out the precise ground on which it is predicated; otherwise it is not error to overrule it. It has repeatedly been so held by this Court. *State* v. *Nulty,* 57 Vt. 543; *Bickford* v. *Travelers' Ins. Co.,* 67 Vt. 418, 32 Atl. 230; *State* v. *Dyer,* 67 Vt. 690, 32 Atl. 814; *German* v. *Ben. & Rut. R. Co.,* 71 Vt. 70, 42 Atl. 972; *Sartwell* v. *Sowles,* 72 Vt. 270, 48 Atl. 11, 82 Am. St. Rep. 943; *Terrill* v. *Tillison,* 75 Vt. 193, 54 Atl. 187. In so far as *French* v. *Grand Trunk Ry. Co.,* 76 Vt. 441, 58 Atl. 722, is to the contrary of this holding, it is hereafter to be disregarded.

The other ground of the motion is more difficult. The question presented under it is a federal one, and the decisions of the Supreme Court of the United States must be accepted as author-

ity. From these it appears, either expressly or by inference, that the following employees, when engaged as stated, were working in interstate commerce. A car repairer, replacing a draw-bar in a car then in use in interstate transportation. *Walsh* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, L. ed. 327, 32 Sup. Ct. 169, 38 L. R. A. (N. S.) 44. A fireman, walking along ahead to pilot an engine through the yard to an interstate train, to which it was to be attached as a helper. *Norfolk· & W. R. Co.* v. *Earnest*, 229 U. S. 114, 57 L. ed. 1096, 33 Sup. Ct. 654, Ann. Cas. 1914 C 172. A workman, carrying a bag of bolts to be used by him in repairing a bridge regularly used in interstate transportation. *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. 648, Ann. Cas. 1914 C 153. A clerk on his way through the railroad yard to meet and check up an interstate train and to mark its cars so that the switching crew would know what to do with them when breaking up the train. *St. Louis S. F. & T. Ry. Co.* v. *Seale*, 229 U. S. 156, 57 L. ed. 1129, 33 Sup. Ct. 651, Ann. Cas. 1914 C 156. A fireman· who, having prepared his engine for an intrastate trip hauling a train containing interstate cars and being about to start out on his run, is walking across adjacent tracks on an errand consistent with his duties. *North Carolina R. Co.* v. *Zachary*, 232 U. S. 248, 58 L. ed. 591, 34 Sup. Ct. 305, Ann. ·Cas. 1914 C 159. A brakeman on an intrastate train containing cars loaded with interstate· freight, engaged in setting the brake on an intrastate car shifted on to a siding, thereby to enable the engine attached to the car to return to the train and proceed on its journey. *New York Cent. & H. R. R. Co.* v. *Carr*, 238 U. S. 260, 59 L. ed. 1298, 35 Sup. Ct. 780. A fireman on a switching engine, engaged in moving an intrastate car for the purpose of reaching and moving an interstate car. *Louisville* v. *N. R. Co.* v. *Parker*, 242 U. S. 13, 61 L. ed. 119, 37 Sup. Ct. 4.

On the other hand, the following employees, when engaged as stated, were not employed in interstate commerce. A fireman on a switching engine, engaged in moving intrastate cars between two points in the same yard,—although upon completion of that work he was to assist in the movement of other cars as a step in interstate transportation. *Ill. Cent. R. Co.* v. *Behrens*, 233 U. S. 473, 58 L. ed. 1051, 34 Sup. Ct. 646, Ann. Cas. 1914 C 163. A miner, engaged in the mine of a railroad company getting out coal for use in interstate engines. *Delaware, L. & W. R. Co.* v.

*Yurkonis*, 238 U. S. 439, 59 L. ed. 1397, 35 Sup. Ct. 902. A machinist, engaged in moving to a new location an overhead countershaft in a shop devoted to the repair of locomotives used in both interstate and intrastate commerce. *Shanks* v. *Delaware, L. & W. R. Co.*, 239, U. S. 556, 60 L. ed. 436, 36 Sup. Ct. 188, L. R. A. 1916 C 797. A member of a switching crew, engaged in transferring loaded coal cars to the coal chutes where the coal was to be stored for use by locomotives in interstate commerce. *Chicago, B. & Q. R. Co.* v. *Harrington*, 241 U. S. 177, 60 L. ed. 941, 36 Sup. Ct. 517. A yard conductor, alighting from an engine on his return from the movement of an interstate car to his superior for further orders, although such orders would have required him immediately to make up an interstate train. *Erie R. Co.* v. *Welsh*, 242 U. S. 303, 61 L. ed. 319, 37 Sup. Ct. 116. A freight conductor employed on a round-trip run, returning with a train of intrastate freight only,—although on the trip out interstate freight was carried. *Ill. Cent. R. Co.* v. *Peery*, 242 U. S. 292, 61 L. ed. 309, 37 Sup. Ct. 122. A machinist's helper, engaged in a roundhouse repairing an engine which had been employed in both intrastate and in interstate traffic, and which was subsequently so used. *Minneapolis & St. L. R. Co.* v. *Winters*, 242 U. S. 353, 61 L. ed. 358, 37 Sup. Ct. 170.

When the Pedersen Case was announced, it was generally accepted by the profession as warranting the conclusion that the Supreme Court would ultimately hold that the act applied to practically all employees of interstate railroads, except, possibly, those engaged upon new construction. *Cousins* v. *Ill. Cent. R. Co.*, 126 Minn. 172, 148 N. W. 58. This is well shown by the cases cited on page 11 of the plaintiff's brief, nearly all of which were decided before the Shanks case appeared and are predicated largely on the Pedersen Case. In some of these it is laid down in the broadest terms that one engaged in repairing an instrumentality of interstate commerce is himself employed in such commerce. The author of the note to *Lamphere* v. *Oregon R. & N. Co.*, 47 L. R. A. (N. S.) 1, at p. 60 suggested that, though the original act was declared invalid because Congress had attempted to cover employees not engaged in interstate commerce, the Act of 1908, by the Pedersen Case, had been extended as far as Congress went in the former act. For, he says, as shown by Mr. Justice Lamar in his dissenting opinion in that case:

"It would seem to require a rather vivid imagination to con-

ceive of an occupation in which an employee of an interstate railroad could be employed which would not be connected in some way with a furtherance of interstate commerce." In that dissent, we may say in passing, Mr. Justice Holmes and Mr. Justice Lurton concurred.

So it was that when *Ill. Cent. R. Co.* v. *Behrens, supra,* appeared, it seemed to many like a modification of the doctrine of the Pedersen case. And when the Shanks case was announced in January, 1916, by a unanimous court, (there had been plenty of dissents before,) it seemed clear enough that either the Pedersen case did not carry the court as far as had been supposed, or that the court had settled upon a less liberal construction of the federal act.

With these decisions before us to guide our judgment, the question we are called upon to decide is, was Castonguay, at the time of his injury, engaged in interstate transportation, or in a work so closely related to it as to be practically a part of it? *Shanks* v. *Delaware, L. & W. R. Co., supra.* If he was then at work upon a direct and permanent instrumentality of such transportation,—such as the road-bed or a bridge, or a locomotive or car temporarily withdrawn from that service for repairs,— he was within the protection of the act; if, on the other hand, he was working upon an indirect, remote or possible instrumentality of such transportation, he was not within the act.

We feel constrained to hold that this case is ruled by the Shanks case and not by the Pedersen case, and that Castonguay's relation to interstate transportation was too remote to bring him within the act. It seems clear that if a workman changing a shaft in a machine shop is too far removed from the actual transportation to be within the act, he would be equally so if he was repairing or replacing the shaft; and he would be equally so if he was changing the location of a window in the shop, or repairing it, or replacing it. The machine shop and the roundhouse are both parts of the necessary equipment of interstate railroads; but they are not so directly related to actual transportation as "to be practically a part of it." If Shanks was not engaged in interstate commerce, Castonguay could not have been for he was one step further removed from actual transportation. The burden of proof was on the plaintiff, *Tsmura* v. *Great Northern R. Co.,* 58 Wash. 316, 108 Pac. 774, and on this ground the motion for a verdict should have been sustained.

It was error to submit the question whether or not the plaintiff was engaged in interstate commerce to the jury. If any of the essential facts had been in dispute, a jury question would, of course, have been presented. *North Car. R. Co.* v. *Zachary, supra.* But none of such facts were in dispute; nothing was in dispute that could affect that question. It was, therefore, for the court.

The other questions briefed by the defendant were not raised below and consequently are not before us.

The errors specified require a reversal, but it does not necessarily follow that the plaintiff is to be turned out of court. For he may have a way of escape from his present situation.

*Judgment reversed and cause remanded. Let the plaintiff apply for leave to amend if he be so advised.*